60 P.3d 607 (2002)
114 Wash.App. 687
STATE of Washington, Respondent,
v.
Don MacKENZIE, Petitioner.
Karen Ann Meagher, Respondent,
v.
State of Washington, Department of Licensing, Petitioner.
City of Seattle, Respondent,
v.
Troy Shane Wolff, Petitioner.
Nos. 47836-2-I, 48228-9-I, 48536-9-I.
Court of Appeals of Washington, Division 1.
December 23, 2002.
*609 Jeffrey D. Veitch, Bellevue, WA, George L. Bianchi, Bianchi Law Firm, Seattle, WA, Cara Marie Starr, Howard Stanton Stein, Tucker & Stein, P.S., Inc., Bellevue, WA, for petitioners MacKenzie and Wolff and respondent Meagher.
Seth Aaron Fine, Charles Blackman, Snohomish County Prosecutor's Office, Everett, WA, Sharon Sullivan Eckholm, Assistant Attorney General, Olympia, WA, Moses Flint Garcia, Angela Marie Tinker, Seattle City Attorney's Office, Seattle, WA, for petitioner Department of Licensing and respondents State and City of Seattle.
*608 GROSSE, J.
In the course of proceedings for driving while under the influence of intoxicating liquor or any drug, or under the implied consent statute, the trial courts of this state have inherent authority to review administrative *610 regulations pertaining to the admissibility of test results of breath alcohol content measured by a BAC Verifier DataMaster machine. Included in this authority is review of the rational basis for changes to the administrative code to comply with a legislative mandate lowering the breath alcohol concentration from .10 to .08, whether a valid emergency existed, and whether the emergency regulations could apply retroactively.
We hold the changes to the administrative code valid, uphold the declaration of an emergency, and hold that because the modifications made by the emergency regulation were both curative and remedial, the regulation could properly be retroactive.

FACTS
Two of these cases, State v. MacKenzie and City of Seattle v. Wolff, involved arrests for driving while under the influence of intoxicating liquor or any drug (DUI). The third case, Meagher v. State of Washington, Department of Licensing, involved an administrative license revocation after a DUI citation. However, because these cases involve related issues about the ability of lower courts to hear arguments on the interpretation and validity of these rules, and whether the rules are valid or were properly interpreted by the lower courts, we consolidate these cases and issue a single opinion.
1. History of DUI Laws and Regulations.
On January 1, 1999, the legal breath alcohol concentration limit in Washington was lowered from .10 to .08.[1] On April 1, 1999, the state toxicologist amended numerous provisions of the Washington Administrative Code (WAC) to comply with the new statute.[2] When the state toxicologist amended the administrative regulations, he failed to amend WAC 448-13-060, which addressed the accuracy of test results obtained from a BAC Verifier DataMaster (DataMaster), the machine used to test breath alcohol concentration levels. Thus, although all of the machines were changed to conform to the new legal limit of .08, the definition of a valid and accurate test remained one that registered a simulated external standard result between.090 and .110. On April 27, 1999, the state toxicologist filed emergency rule WAC 448-13-060(3) which stated:
The simulator external standard result must lie between .090 to .110 inclusive for tests conducted prior to April 1, 1999, and.072 to .088 inclusive for tests conducted on or after April 1, 1999. This provision is remedial in nature and applies to any judicial proceeding conducted after April 27, 1999.
The emergency rule also stated:
The purpose of this change is to correct an oversight in establishing the admissibility standards for breath alcohol test results. This regulation is remedial in nature and is designed to ensure that the standards for the admissibility of breath tests in judicial proceedings are consistent with the regulations for performing a breath test.
Additional language was added on August 13, 1999 to allow the WAC provision to also apply to administrative proceedings. This final version of the rule became permanent on November 22, 1999. On April 1, 1999, to conform to the new breath alcohol concentration level, test instrument technicians replaced the .10 external simulator solution cylinder with a .08 simulator solution cylinder on all DataMaster machines. The technicians also manually entered new 10 percent margins, on the same keypad used to change dates and times, to reflect the change in concentration to .08. No quality assurance procedures were immediately performed on the DataMaster machines when these changes were made. A quality assurance procedure is required to be performed on a DataMaster machine when "replacement or updating of the software ... or recalibration" occurs.
2. Parties.
A. State v. MacKenzie, No. 47836-2-I.
On August 11, 1999, MacKenzie was stopped in Snohomish County and arrested *611 for DUI. The DataMaster used to test MacKenzie's breath alcohol concentration, machine number 949191, had received the same changes made to all DataMaster machines after the legal breath alcohol concentration level had been lowered, but had not received a quality assurance procedure. At trial in Snohomish County District Court, South Division, MacKenzie argued that administrative rules mandated that a quality assurance procedure be performed after these types of changes were made to a DataMaster machine, and alternatively that the later enacted emergency regulation was invalid.
The trial court heard testimony from the state toxicologist, Dr. Barry K. Logan, and received a transcript of stipulated testimony from Trooper Vranish, the State Patrol officer who made the changes to the DataMaster machines in Snohomish County. Trooper Vranish testified that the machine's software was set to easily anticipate and accept new parameters, thus he did not need to open the instrument or access the read only memory chip which held the machine's program when he changed the parameters. Trooper Vranish stated that he merely held down a button on the same keypad used to change dates and times, and the data was entered by scrolling up or down preset numbers. Dr. Logan confirmed that a DataMaster's software was not fundamentally altered or updated when either dates or new parameters were entered on the keypad. Both Trooper Vranish and Dr. Logan also testified that changing a DataMaster's external simulator solution from .10 to .08, or changing the measurement parameters, did not change the calibration factors. This was because the machine's calibration was a function of the machine's ability to measure accurately, regardless of the level of alcohol concentration in an external standard or the parameters used to measure the external standard. Because the state toxicologist did not believe that changes to the external solution and measurement parameters either updated the software or recalibrated the machines, he did not require that a quality assurance procedure be performed after the changes were made. The state toxicologist further testified that the emergency amendment was justified because discrepancies between the regulations regarding the admissibility of breath test results would result in their being inadmissible in legal proceedings, and this was a possible "significant injury to public safety."
In MacKenzie, the district court ruled that (1) the changes made to the DataMaster machine to make it conform to the new breath alcohol concentration limit of .08 constituted either a "software update" or "standardized" and recalibrated the machine, and that no quality assurance procedure was thereafter performed as required by administrative rule, and (2) emergency WAC 448-13-060 enacted on April 27, 1999 was invalid because there was no true emergency. Thus, the evidence of the breath test results was inadmissible.
The State filed a writ of review in superior court. The superior court granted the State's writ of review and reversed the district court's findings. Thus, the question on review is whether the district court could entertain a challenge to the validity of an administrative rule, and whether the superior court properly reversed.
B. City of Seattle v. Wolff, No. 48536-9.
On April 15, 1999, Wolff was stopped in the City of Seattle for driving erratically. His two breath alcohol tests registered above .08 and he was subsequently arrested. At trial, the Seattle Municipal Court ruled that emergency WAC 448.13.060 was remedial in nature and thus could be retroactive and applicable to Wolff, attaching by reference a copy of its memorandum opinion in City of Seattle v. Dunphy.[3] The trial court admitted the breath test results, Wolff was convicted, and the superior court upheld the trial court's determinations. Wolff appeals.
C. Meagher v. State of Washington, Department of Licensing, No. 48228-9.
On November 23, 1999, Karen Meagher was stopped in the City of Seattle for driving above the speed limit. Her two breath alcohol tests registered above .08 and the Department of Licensing revoked Meagher's license *612 for two years in an administrative hearing. The Department of Licensing hearings officer determined that the rule was not retroactive as to Meagher, but that the state toxicologist nonetheless had the authority to enact a retroactive rule and the rule was valid. The King County Superior Court reversed the Department of Licensing, holding that WAC 448-13-060 was invalidly retroactive because it was neither remedial nor curative and, because it was not severable, Meagher's breath test results were inadmissible. The Department of Licensing argues on appeal that the rule was valid, or it applied prospectively to Meagher, or that only the Thurston County Superior Court may determine the validity of administrative rules.

DISCUSSION
1. Lower Courts' Authority to Review Administrative Rules.
State v. Ford establishes that all courts, including lower trial courts, have inherent power to review agency action to ensure that it is not arbitrary and capricious, or contrary to law.[4] To the extent that a lower court interprets the language of an administrative rule in a criminal proceeding, or determines whether an agency's action in interpreting a rule is contrary to law, this is an exercise of its inherent powers under Ford, not an analysis of the rulemaking process itself. Further, in a contested case, to the extent that an administrative agency is alleged to have determined a regulation not applicable without considering the facts or circumstances before it, declared a regulation to be necessary due to an artificial or false emergency, or engaged in rulemaking that is improperly retroactive, such action is arbitrary and capricious and a trial court must engage in limited inquiry regarding these allegations.
The trial courts in MacKenzie and Wolff engaged only in such limited inquiries and did not reach beyond their inherent powers into matters governed by the Administrative Procedure Act.[5] In MacKenzie, the trial court interpreted administrative regulations, an exercise of its inherent power of review under Ford. The trial courts in both MacKenzie and Wolff addressed the issues of whether a true emergency existed when emergency regulations were enacted and whether the emergency regulations were properly retroactive. This was also an exercise of their power under Ford to examine agency action to ensure it was not arbitrary, capricious, or contrary to law.
In our review of the trial courts' various interpretations of these regulatory provisions, we accept a trial court's stated or inferred factual determinations if they are supported by substantial evidence, and we review the decision of a district or municipal court to determine whether that court has committed an error of law.[6] When reviewing an administrative order, this court examines the record of the administrative tribunal, not of the superior court operating in its appellate capacity.[7] In either situation, we must determine whether the state toxicologist's actions when he enacted or interpreted specific regulations were contrary to law or arbitrary and capricious.[8] Further, although an agency's construction of regulatory provisions is subject to independent appellate review, its interpretation of the regulations is entitled to great weight.[9]
*613 2. Necessity of Quality Assurance Procedures.
The issue here is whether the state toxicologist acted contrary to law or in an arbitrary and capricious manner when he determined that replacing the external simulator solution cylinders and entering new 10 percent margins on all DataMaster machines to reflect the lowered legal alcohol concentration limit did not constitute either a "replacement or updating" of software or a "recalibration" of the machine pursuant to administrative code,[10] and thus did not require a complete quality assurance procedure.
The testimony in MacKenzie established that new parameters or 10 percent margins were entered on a keypad, and that the DataMaster's software allowed for and anticipated changes in the parameters or margins. Thus, when the new margins were entered, the software which allowed the machine to operate was not changed. Similarly, testimony established that the calibration of the DataMaster machines involved ensuring the machine properly measured the alcohol vapor concentration of an external standard test. It is a function of the machine's ability to measure accurately regardless of the level of alcohol concentration in the external standard and regardless of any parameters for accuracy its operators may manually enter, here 10 percent margins based on the breath alcohol concentration.
The state toxicologist's interpretation of the regulations is entitled to great weight. Based on his testimony it is clear that manual entry of new parameters or margins did not constitute either replacement of or an update to the software. Likewise, the changes to the external simulator solution and entry of a new standard into the machine did not constitute a recalibration of the machines. Thus, the state toxicologist's interpretation of the regulations was not contrary to law. Therefore, the state toxicologist's decision that a quality assurance procedure was not required when these changes were made was not willful and unreasoning action taken in disregard of the facts and circumstances before him. Thus, we cannot say that his actions were arbitrary and capricious.
3. Emergency Regulation WAC 448-13-060.
On April 1, 1999, the state toxicologist enacted various administrative regulations to reflect the new legal breath alcohol concentration limit, but inadvertently omitted changing one administrative regulation that established the admissibility standards for breath alcohol test results.[11] An emergency administrative regulation was enacted on April 27, 1999 to correct this oversight, and applied to breath tests conducted between April 1 and April 27. MacKenzie argues there was no true emergency, and Wolff argues that the regulation was improperly retroactive.
Under the Administrative Procedure Act, agencies may enact emergency regulations that are effective immediately if the agency for good cause finds that immediate adoption of the rule is necessary for the preservation of the public health, safety, or general welfare.[12] The emergency regulation was intended to make the regulation relating to admissibility of breath test results consistent with regulations for performing a valid test. The state toxicologist believed that if the inconsistency remained, breath test results would be inadmissible in legal proceedings and this was a possible "significant injury to public safety" that justified an emergency amendment.[13]
The widespread inadmissibility of breath test results is clearly a public safety emergency justifying promulgation of temporary emergency regulations. The agency's actions in determining that an emergency situation existed were not arbitrary and capricious because the emergency was not artificial or fabricated. Thus, in MacKenzie, the trial court abused its discretion when it substituted *614 its judgment on the wisdom of the regulation for that of the agency[14] and held the breath test results were inadmissible.
The trial court in Wolff was faced with the question of whether the agency acted arbitrarily and capriciously or contrary to law because the emergency regulation was invalidly retroactive. Emergency regulations are effective when enacted.[15] However, the effective date of an administrative regulation does not prohibit the regulation from applying retroactively where the purpose of the regulation is curative or remedial in nature.[16]
When a statute or regulation is adopted to clarify an internal inconsistency to help it conform to its original intent, it may properly be retroactive as curative.[17] Here, the regulation attempted to correct an oversight in establishing the admissibility standards for breath alcohol test results, and to ensure that these standards remained consistent with existing regulations. Therefore, the regulation was clearly intended to be curative.
Further, an amendment is deemed remedial when it relates to practice, procedure, or remedies, and does not affect a substantive or vested right.[18] If a statute or rule is remedial in nature and retroactive application would further its purpose, the courts may apply the rule retroactively.[19] Here, the amendment clearly stated, "This provision is remedial in nature," related to the procedure for establishing admissibility standards for breath alcohol tests, and affected no substantive or vested rights.
Thus, the emergency regulation was both curative and remedial and could be retroactive in both language and specific application to Wolff because it furthered the purpose of maintaining admissibility of breath test results after the changes to the legal breath alcohol concentration level. The trial court in Wolff correctly held that the emergency regulation was therefore validly retroactive and not contrary to law. Wolff's breath tests were admissible.
4. Meagher's Standing to Contest the Validity of Emergency Regulations.
The emergency regulation that Meagher contests became effective on November 22, 1999. Meagher was cited for DUI on November 23, 1999. Nevertheless, Meagher argues that the Department of Licensing improperly revoked her license for two years because the emergency regulation was improperly retroactive, not severable, and thus invalid.
The administrative rule applied prospectively to Meagher because she was cited after the rule became permanent, and the Department of Licensing's hearings officer properly found that the rule did not affect Meagher directly. One who is not adversely affected by a rule or statute does not have standing to contest its validity.[20] Further, even if Meagher did have standing, we have determined that the rule was enacted pursuant to a valid emergency and that it was properly retroactive.

CONCLUSION
We hold the changes to the administrative code valid, uphold the declaration of an emergency, and hold that because the modifications made by the emergency regulation *615 were both curative and remedial, the regulation could properly be retroactive.
In MacKenzie, we affirm the decision of the superior court granting the State's writ of review, reversing the decision of the district court, and holding the breath test results admissible.
In Wolff, we affirm the decision of the superior court holding that the trial court correctly held the emergency regulation was validly retroactive and not contrary to law and that Wolff's breath tests were admissible.
In Meagher, we reverse the decision of the superior court and affirm the determination of the Department of Licensing that the rule was properly applicable to Meagher.
COX, Acting C.J. and BECKER, C.J., concur.
NOTES
[1] RCW 46.61.502.
[2] RCW 46.61.506(3); RCW 46.61.502; RCW 46.61.504.
[3] City of Seattle v. Dunphy, No. 353431 (Seattle Mun. Ct. Aug. 5, 1999).
[4] State v. Ford, 110 Wash.2d 827, 828-30, 755 P.2d 806 (1988). See also, Pierce County Sheriff v. Civil Serv. Comm'n, 98 Wash.2d 690, 693-94, 658 P.2d 648 (1983).
[5] RCW 34.05.
[6] Ford, 110 Wash.2d at 829-30, 755 P.2d 806; RALJ 9.1(a); City of Seattle v. Briggs, 109 Wash.App. 484, 488, 38 P.3d 349 (2001); State v. Brokman, 84 Wash.App. 848, 850, 930 P.2d 354 (1997).
[7] Hilltop Terrace Homeowner's Ass'n v. Island County, 126 Wash.2d 22, 29-30, 891 P.2d 29 (1995).
[8] Ford, 110 Wash.2d at 830-32, 755 P.2d 806; Wash. State Liquor Control Bd. v. Wash. State Pers. Bd., 88 Wash.2d 368, 378-79, 561 P.2d 195 (1977).
[9] Wash. Liquor Control Bd., 88 Wash.2d at 379, 561 P.2d 195.
[10] WAC 448-13-110.
[11] WAC 448-13-060.
[12] RCW 34.05.350(1).
[13] State v. Straka, 116 Wash.2d 859, 810 P.2d 888 (1991); Brokman, 84 Wash.App. 848, 930 P.2d 354.
[14] Brannan v. Dep't of Labor & Indus., 104 Wash.2d 55, 60, 700 P.2d 1139 (1985).
[15] RCW 34.05.350; RCW 34.05.310(4)(a), (d); RCW 34.05.380(2).
[16] In re Pers. Restraint of Matteson, 142 Wash.2d 298, 308-09, 12 P.3d 585 (2000); Howell v. Spokane & Inland Empire Blood Bank, 114 Wash.2d 42, 47, 785 P.2d 815 (1990).
[17] Matteson, 142 Wash.2d at 308-09, 12 P.3d 585; Johnson v. Continental West, Inc., 99 Wash.2d 555, 560-62, 663 P.2d 482 (1983). See also, W.R. Grace & Co. v. Dep't of Revenue, 137 Wash.2d 580, 595-96, 600-01, 973 P.2d 1011 (1999).
[18] Howell, 114 Wash.2d at 47, 785 P.2d 815; Bayless v. Cmty. Coll. Dist. XIX, 84 Wash.App. 309, 312, 927 P.2d 254 (1996).
[19] Howell, 114 Wash.2d at 47, 785 P.2d 815.
[20] Haberman v. Wash. Pub. Power Supply Sys., 109 Wash.2d 107, 138, 744 P.2d 1032 (1987) (citing State v. Carroll, 81 Wash.2d 95, 103-04, 500 P.2d 115 (1972)).