128 P.3d 647 (2006)
Bruce LETOURNEAU, Petitioner,
v.
STATE of Washington DEPARTMENT OF LICENSING, Respondent.
No. 55816-1-I.
Court of Appeals of Washington, Division 1.
February 21, 2006.
*648 Drue Lyn Kirlby, Fox Bowman & Duarte, Bellevue, for Appellant.
Robert W. Kosin, Office of the Attorney General, Seattle, for Respondent.
BAKER, J.
¶ 1 Bruce Letourneau appeals an order affirming the suspension of his driver's license, arguing that the administrative hearing officer erred by admitting the results of his breath tests into evidence. We are asked to decide whether a breath test simulator thermometer that was certified under former WAC 448-13-035[1] constitutes "a thermometer approved of by the state toxicologist" under RCW 46.61.506(4)(a)(iv). We hold that it does, and affirm.

I.
¶ 2 On April 29, 2004, a Washington State patrol trooper stopped Letourneau after he observed him driving his motorcycle over the speed limit and weaving within the traffic lane. The trooper conducted field sobriety tests, concluded that Letourneau was intoxicated, and arrested him for driving under the influence of intoxicants (DUI). At the police station, Letourneau provided two breath samples, which showed that his blood-alcohol level was over the legal limit.
¶ 3 The Department of Licensing suspended Letourneau's driver's license for 90 days. Letourneau requested an administrative licensing hearing, which was held in July 2004. During the hearing, Letourneau argued that his breath tests were inadmissible under RCW 46.61.506(4)(a). This statutory provision, which pertains to the admissibility of breath tests in any civil or criminal proceeding arising out of an allegation that the defendant was driving under the influence, became effective on June 10, 2004. Letourneau argued that the Department could not show that the temperature of the simulator solution in the breath test instrument was measured by a thermometer approved of by the state toxicologist, as required by RCW 46.61.506(4)(a)(iv), because there was no such thing as an "approved" thermometer at the time his breath tests were administered.
¶ 4 The hearing officer rejected Letourneau's argument and sustained his license suspension. On review, the superior court affirmed. We granted discretionary review.

II.
¶ 5 We are asked to interpret the meaning of the phrase "thermometer approved of by the state toxicologist" under RCW 46.61.506(4)(a)(iv). Statutory interpretation is a question of law, which we review de novo.[2]
¶ 6 In 2004, the Legislature amended former RCW 46.61.506[3] and added subsection (4), which provides:
A breath test performed by any instrument approved by the state toxicologist shall be admissible at trial or in an administrative proceeding if the prosecution or department produces prima facie evidence of the following:

*649 (i) The person who performed the test was authorized to perform such test by the state toxicologist;
(ii) The person being tested did not vomit or have anything to eat, drink, or smoke for at least fifteen minutes prior to administration of the test;
(iii) The person being tested did not have any foreign substances, not to include dental work, fixed or removable, in his or her mouth at the beginning of the fifteen-minute observation period;
(iv) Prior to the start of the test, the temperature of the simulator solution as measured by a thermometer approved of by the state toxicologist was thirty-four degrees centigrade plus or minus 0.3 degrees centigrade;
(v) The internal standard test resulted in the message "verified";
(vi) The two breath samples agree to within plus or minus ten percent of their mean to be determined by the method approved by the state toxicologist;
(vii) The simulator external standard result did lie between .072 to .088 inclusive; and
(viii) All blank tests gave results of .000.[4]
The amendments became effective on June 10, 2004.
¶ 7 The relevant portion for purposes of this appeal is subsection (4)(a)(iv), which requires the Department to show that, "[p]rior to the start of the test, the temperature of the simulator solution as measured by a thermometer approved of by the state toxicologist was thirty-four degrees centigrade plus or minus 0.3 degrees centigrade."[5] The state toxicologist adopted an emergency rule, which specifically approved of the type of thermometer used to test the simulator solutions in the breath test instrument that was used to administer Letourneau's breath tests.[6] The emergency rule also became effective on June 10.
¶ 8 Before the 2004 amendments, the state toxicologist had established rules governing breath testing under the authority of former RCW 46.61.506.[7] Former WAC 448-13-020[8] approved of the DataMaster instrument as the only breath test instrument to be used in Washington, and required that a simulator approved of by the National Highway Traffic Safety Administration be attached to each instrument. A simulator is the component that provides the vapor sample of alcohol concentration. To function properly, the simulator solution must be maintained at a known temperature.[9] Thus, the temperature of the simulator solution must be measured by an accurate simulator thermometer. Former WAC 448-13-035 required that the thermometers used in breath test simulators be certified on an annual basis for accuracy. Letourneau was tested using a DataMaster breath test instrument equipped with a simulator that contained a mercury-in-glass thermometer. This thermometer was certified under former WAC 448-13-035.[10]
¶ 9 Nevertheless, Letourneau argues that, because he was arrested and administered breath tests before June 10, the Department could not admit his breath tests into evidence because there was no such thing as a thermometer approved of by the state toxicologist at the time he provided breath samples.
¶ 10 In response, the Department argues that the thermometer which was used to administer Letourneau's breath tests was approved *650 of by the state toxicologist because the toxicologist had previously certified such thermometers. The Department concedes that certification and approval have different meanings, but it argues that certification necessarily implies approval. Alternatively, the Department argues that the toxicologist's emergency rule, which amended former WAC 448-13-020 and expressly approved mercury-in-glass thermometers, applied retroactively.
¶ 11 We must decide whether a "thermometer approved of by the state toxicologist" under RCW 46.61.506(4)(a)(iv) includes a thermometer that had been "certified" by the state toxicologist under former WAC 448-13-035. The primary objective in statutory interpretation is to discern and implement the intent of the Legislature.[11] The starting point for interpreting a statute is its plain language and ordinary meaning.[12] "The plain meaning of a statute may be discerned `from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'"[13]
¶ 12 The Legislature has not defined "approved" for purposes of chapter 46.61 RCW. Everyday usage of the terms "approve" and "certify" indicate that, although they are often interchangeable, they are not always synonymous. Approve means "to judge and find commendable or acceptable."[14] Certify means "to confirm or attest ... as being true, meeting a standard, or being as represented."[15] The toxicologist may approve of a thermometer that has never been certified, or tested against a standard.
¶ 13 But an approved thermometer under RCW 46.61.506(4)(a)(iv) necessarily includes one that was certified under former WAC 448-13-035. Before June 10, 2004, the state toxicologist was charged with approving the instruments for administering breath tests. A thermometer was a necessary component of a simulator and a simulator was a necessary component of a breath test instrument. Under former WAC 448-13-035, the state toxicologist required that simulator thermometers be certified for accuracy under particular standards. In effect, any thermometer certified under former WAC 448-13-035 was approved of by the state toxicologist.
¶ 14 The clear intent of the Legislature in adopting subsection (4) supports this interpretation. The Legislature's purpose for amending former RCW 46.61.506 was to "ensure swift and certain consequences for those who drink and drive."[16] To meet this goal, it adopted standards that govern the admissibility of breath tests in order to "provide a degree of uniformity" and "reduce the delays caused by challenges to various breath test instrument components and maintenance procedures."[17] Reducing the phrase "a thermometer approved of by the state toxicologist" to a very narrow and technical meaning does not comport with the Legislature's goal of reducing delays caused by challenges to the admissibility of breath tests.
¶ 15 Letourneau points to the state toxicologist's emergency rule as proof that a certified thermometer under former WAC 448-13-035 was not approved of by the toxicologist for purposes of RCW 46.61.506(4)(a)(iv). He argues that, if a certified thermometer constituted an approved thermometer, then there was no need for the toxicologist to adopt the emergency rule. We interpret the toxicologist's action as an effort to be thorough, and reject Letourneau's attempt to turn the use of both a belt and suspenders into a sword.
¶ 16 Alternatively, the toxicologist's emergency rule, which approved of the type of thermometer used during Letourneau's *651 breath testing, applied retroactively because it was curative and remedial. There is a strong presumption that statutes and rules apply prospectively only. However, this presumption may be overcome "if it is shown that (1) the legislature intended the amendment to apply retroactively, (2) the amendment is curative, or (3) the amendment is remedial."[18] The emergency rule amending former WAC 448-13-020 became effective on June 10 and did not expressly state that it was to be applied retroactively.
¶ 17 But "the effective date of an administrative regulation does not prohibit the regulation from applying retroactively where the purpose of the regulation is curative or remedial in nature"[19] and it is "intended to clarify rather than change the law."[20] A regulation is curative when it is adopted to clarify an inconsistency.[21] An amendment is remedial if "`it relates to a practice, procedure or remedies, and does not affect a substantive or vested right.'"[22]
¶ 18 In State v. MacKenzie,[23] we held that an emergency rule adopted to address the definition of a valid and accurate breath test result was both curative and remedial because "it furthered the purpose of maintaining admissibility of breath test results after the [Legislature's] changes to the legal breath alcohol concentration level."[24] Similarly, the emergency rule amending former WAC 448-13-020 was curative and remedial because it furthered the purpose of maintaining the admissibility of breath test results after the Legislature's 2004 amendments. The emergency regulation was intended to clarify which thermometers were approved of by the state toxicologist, not change established law. The rule relates to the procedures for approving breath tests and their admissibility into court and does not affect the substantive rights of Letourneau.
¶ 19 The Department produced prima facie evidence that the temperature of the simulator solution in the breath test instrument that was used to administer Letourneau's breath tests was measured by "a thermometer approved of by the state toxicologist," as required under RCW 46.61.506(4)(a)(iv).
¶ 20 AFFIRMED.
WE CONCUR: BECKER and GROSSE, JJ.
NOTES
[1] Former WAC 448-13-035, repealed by Wash. St. Reg. XX-XX-XXX (Oct. 23, 2004).
[2] State v. Schultz, 146 Wash.2d 540, 544, 48 P.3d 301 (2002).
[3] Former RCW 46.61.506 (2004), amended by Laws of 2004, ch. 68, § 4.
[4] RCW 46.61.506(4)(a). Under subsection (4), challenges to the reliability or accuracy of a breath test may be considered by the fact finder and go to the weight of the evidence, but cannot be considered by the court when determining the admissibility of the test once the State has provided prima facie evidence of the factors listed in (4)(a). RCW 46.61.506(4)(c).
[5] RCW 46.61.506(4)(a)(iv) (emphasis added).
[6] Wash. St. Reg. XX-XX-XXX (June 10, 2004). The approval of breath test instruments is now found in WAC 448-16-020.
[7] The toxicologist has adopted new rules in accordance with the amendments and repealed the former rules.
[8] Former WAC 448.13.020, repealed by Wash. St. Reg. XX-XX-XXX (Oct. 23, 2004).
[9] See former WAC 448-13-030(22), repealed by Wash. St. Reg. XX-XX-XXX (Oct. 23, 2004) (defining "simulator").
[10] This thermometer is now "approved" under WAC 448-16-020(2).
[11] State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003).
[12] J.P., 149 Wash.2d at 450, 69 P.3d 318.
[13] J.P., 149 Wash.2d at 450, 69 P.3d 318 (quoting Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 11, 43 P.3d 4 (2002)).
[14] Webster's Third New International Dictionary 106 (3d ed.1993).
[15] Webster's Third New International Dictionary 367 (3d ed.1993).
[16] Laws of 2004, ch. 68, § 1.
[17] Laws of 2004, ch. 68, § 1.
[18] In re Pers. Restraint of Stewart, 115 Wash.App. 319, 332, 75 P.3d 521 (2003).
[19] State v. MacKenzie, 114 Wash.App. 687, 699, 60 P.3d 607 (2002).
[20] Magula v. Benton Franklin Title Co., 131 Wash.2d 171, 182, 930 P.2d 307 (1997).
[21] MacKenzie, 114 Wash.App. at 699, 60 P.3d 607.
[22] MacKenzie, 114 Wash.App. at 700, 60 P.3d 607 (quoting Bayless v. Cmty. Coll. Dist. XIX, 84 Wash.App. 309, 312, 927 P.2d 254 (1996) (internal quotation marks omitted)).
[23] 114 Wash.App. 687, 60 P.3d 607 (2002).
[24] MacKenzie, 114 Wash.App. at 700, 60 P.3d 607.