[No. 58938-1.   En Banc.   May 20, 1993.]

RICHARD L. POPE, JR., *Respondent*, v. THE UNIVERSITY OF WASHINGTON, *Appellant*.

*Christine O. Gregoire, Attorney General,* and *William B. Collins, Division Chief,* for appellant.

*Helsell, Fetterman, Martin, Todd & Hokanson,* by *Phillip D. Noble,* for respondent.

*Patrick E. McBride* on behalf of the Department of Health and Human Services, amicus curiae.

UTTER, J. — This class action concerns whether the defendant, the University of Washington (University), properly withheld Social Security taxes from the class employees, of

which plaintiff, Richard Pope, is a member. The University appeals from the trial court's grant of partial summary judgment in favor of the class for breach of contract and violation of RCW 49.48.010. It also appeals the trial court's ruling, after a bench trial, that it intentionally withheld wages in violation of RCW 49.52.050 resulting in an award of double damages, attorney fees, and costs. The University further appeals the trial court's grant of the class' postjudgment motion to include temporary, part-time, and student employees in the class and its denial of its motion for reconsideration on this issue. The class cross-appeals the trial court's grant of partial summary judgment in favor of the University on the breach of fiduciary duty, misrepresentation, and nondisclosure claims only if the trial court's ruling on liability is not upheld.

We reverse the trial court and hold the University did not violate either RCW 49.48.010 or RCW 49.52.050. This ruling disposes of the issues relating to the scope of the class. The trial court's rulings regarding the claims of breach of fiduciary duty, misrepresentation, and nondisclosure are affirmed.

Resolution of this case necessitates review of the 40-year history of Social Security coverage implementation at the University and the different views regarding coverage taken by the University, the Employment Security Department (EMS), and the Social Security Administration (SSA) during that time span.

The opportunity for states to enroll public employees in Social Security became available in 1950 when Congress amended the Social Security Act to allow voluntary enrollment of public employees who were not otherwise covered by a retirement system. *See* Social Security Act Amendments of 1950, Pub. L. No. 81-734, § 218, 64 Stat. 477, 514-15 (codified at 42 U.S.C. § 418). In 1951, the Washington Legislature authorized the Governor to enter into a voluntary agreement with the federal government to provide Social Security coverage for public employees. Laws of 1951, ch. 184, § 3(a), p. 532; RCW 41.48.030(1). In that year, EMS, the agency designated to administer the program, entered into an agreement

with the SSA (the Basic Agreement). The Basic Agreement extended Social Security coverage to

> all services performed by individuals as employees of the State and as employees of those political subdivisions listed in the Appendix attached hereto, other than services expressly excluded therein and except the following:
>
> (1) Any service performed by an employee in a position covered by a retirement system on the date the agreement is made applicable to the coverage group in which such employee is included.

Clerk's Papers, at 229. The University was not listed in the attached appendix.

In 1954, Congress lifted the prohibition against enrollment of employees covered by a retirement system. Pub. L. No. 83-761, § 101, 68 Stat. 1052, 1055 (1954) (codified at 42 U.S.C. § 418(d)). The next year, the University applied to EMS to extend Social Security coverage to

> all services performed by each of the eligible employees of the Applicant for whom coverage is requested, except the following:
> . . . .
> (e) Services in positions which are not covered by the T.I.A.A. Retirement System of the University of Washington.
> (f) Services in positions which are covered by the State Employees' Retirement System.

Clerk's Papers, at 240 (Application and Agreement). Based upon the Application and Agreement, the state and federal governments agreed in 1956 to modification number 81, which extended coverage to

> Services by individuals as employees of the following school of higher learning of the State, as members of a coverage group . . . of the University of Washington Teachers' Insurance and Annuity Association Retirement System [(TIAA)].

Clerk's Papers, at 244. The modification contained the exclusions listed in the Application and Agreement. In 1957, modification number 156 further extended Social Security coverage to employees covered by the Washington State Public Employees' Retirement Systems (PERS).

Due to coverage inequities cited by the University's retirement and insurance officer and the recommendation of the controller, the provost, in 1962, extended Social Security

coverage to all faculty and staff except hourly paid students and certain nonresident aliens. In 1969, the University requested EMS to investigate whether monthly paid student employees were subject to Social Security. EMS sent this request to the SSA which replied that the provost's 1962 action brought monthly paid student employees within the scope of modification number 81.

Subsequently in 1978, EMS requested an opinion from SSA as to whether the Basic Agreement established a retirement systems coverage group or an absolute coverage group, that is, a coverage group of state employees not in retirement systems positions. The SSA regional attorney concluded that state employees were covered as an absolute coverage group.

The SSA then requested EMS to investigate whether the University was properly not reporting wages for hourly paid student employees. In January 1979, EMS informed the University that its failure to report the wages of all hourly paid student employees was considered a "group error", and the University would be billed for its matching contribution on the unreported wages. The University, however, maintained its position that hourly paid student employees were not covered, although there were interdepartmental communications questioning this position. Between 1978 and 1980, the Attorney General and EMS were attempting to resolve whether coverage existed for student employees. Finally, in May 1981, the provost announced that all student employees, whether paid monthly or hourly, would be covered under Social Security beginning July 1, 1981.

Before this practice was implemented, however, the regional attorney reversed the earlier position and concluded the Basic Agreement established a retirement systems coverage group. As a result, the SSA determined the University's deduction of Social Security from hourly paid student employees was proper, thus resolving the group error. The University then rescinded its decision to begin withholding Social Security from all student employees.

In March 1983, EMS informed the University that the SSA had determined only employees in retirement systems eligible positions were covered by Social Security. EMS advised the University it was in the process of considering whether individuals could retain Social Security wage credits which were erroneously reported and requested the University withhold any action to exclude employees working on a part-time or temporary basis until it was notified by EMS. In October 1983, EMS notified all state agencies, including the University, on the correct method for determining retirement eligibility, for making the appropriate adjustments, and for deleting wage credits. The University was directed to determine which positions were ineligible for retirement systems coverage and to forward this list and the necessary adjustment reports to EMS.

On November 17, 1983, the University determined that 12 graduate student positions were ineligible for Social Security coverage and requested EMS to concur in this determination before processing the refunds. EMS responded it was unclear whether the Board of Regents had authorized the provost's extension of retirement systems coverage to these positions in 1962 and that this issue needed to be resolved. The University requested the Attorney General review this matter, and on January 3, 1984, the Attorney General responded that the Board of Regents had never authorized the provost to extend retirement systems coverage to graduate students or degree candidates.

To challenge the SSA's position that graduate students were covered by Social Security, EMS and the University decided to use the request for a refund from one graduate student assistant as a "test case". This request was forwarded to the SSA which, after an initial denial in April 1985, reversed its position and approved the refund in August 1987 because it found the Board of Regents had never extended retirement systems coverage to graduate students. The University limited the refunds to graduate student research assistants (RA) and teacher assistants (TA).

On July 22, 1988, Richard Pope requested the University cease withholding Social Security from student employees holding positions with the Associated Students of the University of Washington (ASUW) and the Graduate and Professional Student Senate (GPSS) on the basis that these students were also ineligible for retirement systems coverage. Pope was a law student enrolled at the University and in 1988 was elected as a student government representative. Pope was appointed on a temporary and part-time basis to the position of ASUW appointee (job class 0890), which is a monthly paid position. Pope alleges the University originally responded to him by offering retroactive refunds through January 1, 1989, on the condition that the ASUW convert the student positions from monthly to hourly paid positions.

In May 1989, the University determined that 52 job classes, in addition to the RA's and TA's, were not eligible for TIAA or PERS, but were having Social Security withheld. The payroll manager advised the controller in July 1989 that under the terms of the Basic Agreement, only those positions that were eligible for TIAA or PERS were eligible for Social Security. Then, on December 12, 1989, the University announced it would discontinue Social Security coverage beginning January 1, 1990, for certain faculty and academic staff positions which were ineligible to participate in TIAA or PERS. On December 29, 1989, the University also exempted ASUW appointees from Social Security beginning January 1, 1990.[1] The University then informed Pope of the changes occurring as of January and provided him with the necessary information to seek a refund.

Pope filed this action on June 28, 1990, in the King County Superior Court alleging breach of contract, violation of RCW 49.52.050, violation of RCW 49.48.010, breach of fiduciary duty, misrepresentation, and nondisclosure. The trial court

---

[1]Effective July 1, 1991, all employees of the State except student employees must be covered by Social Security. Omnibus Budget Reconciliation Act of 1990, Pub. L. No. 101-508, 104 Stat. 1388. Social Security for student employees remains an option for states. Internal Rev. Serv., Pub. No. 15, *Circular E, Employer's Tax Guide* 22 (Jan. 1993).

certified the class as including all persons employed by the University between March 14, 1983, through February 1, 1991, in positions which were not eligible for retirement systems coverage but from whom the University withheld Social Security. The parties filed cross motions for summary judgment.

On August 1, 1991, the trial court granted summary judgment in favor of the class on the breach of contract and violation of RCW 49.48.010 claims; granted summary judgment in favor of the University on the misrepresentation, nondisclosure, and breach of fiduciary duty claims; and denied the University's motion to redefine the class based upon the 3-year statute of limitation. On December 5, 1991, after a bench trial on the class' claim for violation of RCW 49.52.050, the trial court awarded double damages, attorney fees, and costs to the class. The University's motion for a new trial and for reconsideration was denied.

The University appealed to this court and the class cross-appealed. The class made a postjudgment motion to the trial court to compel the University to include all temporary, part-time, and student employees in the class. The trial court granted this motion and denied the University's motion for reconsideration. The University appealed these two post-judgment orders. On December 2, 1992, this court accepted review of the case.

On appeal, the parties' arguments focus largely upon whether the Basic Agreement, as modified, authorized the University to withhold Social Security from the class. The University argues the Basic Agreement established an absolute coverage group which covered all state employees who were not members of a retirement system, which included the class members. The class and the United States Department of Health and Human Services, as amicus curiae, contend retirement systems coverage was established. The class, however, does not claim standing to challenge whether the University breached the Basic Agreement; rather, the class asserts the University breached its employment contracts with the class members. Consequently, the interpreta-

tion of the Basic Agreement is relevant to the class' breach of contract claim only to the extent there is a term in the employment contracts which prohibits withholding Social Security unless authorized. Without such a term, the breach of contract claim must fail.

The trial court found the employment contracts at issue were formed by the University promising to pay a gross wage and the class employees accepting by performance. *See Haugen v. Central Lutheran Church*, 58 Wn.2d 166, 361 P.2d 637 (1961) (the relationship between an employer and an employee is based on contract). The class argued the University was not authorized to withhold Social Security and, therefore, failed to meet its contractual duty to pay the gross wage. The issue, then, is whether the employment contracts contained a term obligating the University to refrain from withholding Social Security from the gross wage unless authorized.[2]

The class did not present any evidence that such a contract term was contained, expressly or by implication, in the employment contracts. It argues statutes which affect the subject matter of a contract and which exist at the time of a contract's execution are incorporated therein and become a part of the contract. *Rones v. Safeco Ins. Co. of Am.*, 119 Wn.2d 650, 656, 835 P.2d 1036 (1992); *Wagner v. Wagner*, 95 Wn.2d 94, 621 P.2d 1279 (1980); *In re Marriage of Rufener*, 52 Wn. App. 788, 791, 764 P.2d 655 (1988), *review denied*, 112 Wn.2d 1008 (1989). Both parties agree the wage statutes, RCW 49.48 and RCW 49.52, are incorporated into the employment contracts. Thus, a determination of liability under either RCW 49.48.010 or RCW 49.52.050(2) also determines whether the University breached its employment contract with each class member.

---

[2]We do not suggest an employer breaches an employment contract only when he or she violates an express term of the contract; instead, we merely assume an employment contract authorizes the deduction of Social Security withholding in good faith unless the contract or an implied statutory term specifies otherwise. If an employer made deductions from an employee's wages due to dissatisfaction with the employee's work, for example, it would generally be unnecessary for the employee to show an express contract term prohibiting such deductions.

■■■ The trial court ruled on summary judgment that the University violated RCW 49.48.010 based on the following language:

> It shall be unlawful for any employer to withhold or divert any portion of an employee's wages unless the deduction is:
> (1) Required by state or federal law . . ..

This limitation on lawful deductions, however, must be read in the context of the statute as a whole. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 789, 719 P.2d 531 (1986). RCW 49.48.010 governs deductions made from wages at the termination of employment:

> When any employee shall cease to work for an employer, whether by discharge or by voluntary withdrawal, the wages due him on account of his employment shall be paid to him at the end of the established pay period . . ..

*See Cameron v. Neon Sky, Inc.*, 41 Wn. App. 219, 703 P.2d 315, *review denied*, 104 Wn.2d 1026 (1985); *Brown v. Suburban Obstetrics & Gynecology, P.S.*, 35 Wn. App. 880, 670 P.2d 1077 (1983). The statute has not been applied in nontermination cases. Because the class is not claiming the University made improper deductions to wages due at the termination of employment, the statute and the limitation on deductions are inapplicable. For this reason, the trial court erred in granting summary judgment in favor of the class.

The trial court also found, after a bench trial, the University violated RCW 49.52.050(2), which makes it a misdemeanor for any employer to:

> Wilfully and with intent to deprive the employee of any part of his wages, . . . pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract . . ..

RCW 49.52.070 creates civil liability for violation of RCW 49.52.050, including double damages, costs, and attorney fees.

We have previously interpreted and applied RCW 49.52-.050. *See Chelan Cy. Deputy Sheriffs' Ass'n v. County of Chelan*, 109 Wn.2d 282, 745 P.2d 1 (1987); *Lillig v. Becton-Dickinson*, 105 Wn.2d 653, 717 P.2d 1371 (1986); *Yates v. State Bd. for Comm'ty College Educ.*, 54 Wn. App. 170, 773

P.2d 89, *review denied*, 113 Wn.2d 1005 (1989); *Cameron v. Neon Sky, Inc.*, *supra*; *Ebling v. Gove's Cove, Inc.*, 34 Wn. App. 495, 663 P.2d 132, *review denied*, 100 Wn.2d 1005 (1983); *McAnulty v. Snohomish Sch. Dist. 201*, 9 Wn. App. 834, 515 P.2d 523 (1973); *Brandt v. Impero*, 1 Wn. App. 678, 463 P.2d 197 (1969). *Cameron*, however, is the only case concerning a disputed deduction from wages.

In *Cameron*, the employee, the managing officer of a restaurant, unilaterally increased his salary. When the owners learned of this they terminated him and deducted the "overpayment" from his last paycheck. The employee sued. The court held, as a matter of law, that the deduction of a disputed debt from "wages admittedly owed" was not a willful withholding of wages. *Cameron*, 41 Wn. App. at 222.

■ We hold the University's deduction of Social Security was not a willful withholding of wages as a matter of law based on *Cameron*. Here, the University was "deducting the amount of an alleged debt from wages admittedly owed". *Cameron*, 41 Wn. App. at 222. The disputed "debt" is the employees' disputed Social Security deduction. Federal law dictates that such deductions are "considered to have been paid to the employee at the time of such deduction." 26 U.S.C. § 3123. By making the deduction, the University is not disputing the amount of the wage, but actually paying the wage to the employee. Consequently, the University was deducting the amount of a disputed employee debt from wages admittedly owed. This does not deprive the employee of wages under RCW 49.52.050. *Cameron*, 41 Wn. App. at 222.

■ Further, there is no substantial evidence in the record to support the trial court's conclusion that the University acted willfully and with the intent to deprive the employees of their wages. *See Lillig v. Becton-Dickinson*, *supra* at 660 (whether an employer acts "[w]ilfully and with intent" is a question of fact reviewed under the substantial evidence standard).[3] Nonpayment of wages is willful and made with intent

> when it is the result of knowing and intentional action and not the result of a bona fide dispute as to the obligation of payment. . . .

---

[3] We review the record in light of the University's obligation to pay matching contributions for Social Security deductions made from the class' wages.

*Chelan*, 109 Wn.2d at 300.[4] A finding of intentional nonpayment by a party who is not an individual requires the organization to reach a consensus regarding the action taken. *See Chelan Cy. Deputy Sheriffs' Ass'n*, 109 Wn.2d at 302-03.

The record contains testimony and supporting documentation regarding the many letters, memoranda, notices, and recommendations sent between the various University departments discussing whether specific classes of employees or employee job positions were covered by a retirement system or by Social Security. There is no evidence in the record, however, that the University reached a consensus as to whether specific job positions, other than RA's and TA's, were ineligible for Social Security until December 1989 when they announced the withholding would cease as of January 1, 1990.[5] Although the trial court found the University's delay in making a decision was, itself, a decision, there is no substantial evidence in the record this was a University decision made with the intent to deprive employees of their wages. Therefore, the trial court's determination there was a consensus within the University is not supported by substantial evidence.

The University did not violate RCW 49.52.050(2) or RCW 49.48.010. Consequently, the terms of the employment contracts were not breached by the University's deduction of Social Security from the class' wages. Our resolution of the liability issues makes it unnecessary to reach the questions regarding the proper scope of the class.[6]

---

[4]The class' argument that RCW 49.52.050 establishes liability without fault is not persuasive. Lack of intent may be established either by a finding of carelessness or by the existence of a bona fide dispute. *See Yates v. State Bd. for Comm'ty College Educ.*, 54 Wn. App. 170, 176-77, 773 P.2d 89, *review denied*, 113 Wn.2d 1005 (1989); *Brandt v. Impero*, 1 Wn. App. 678, 681, 463 P.2d 197 (1969); *Ebling v. Gove's Cove, Inc.*, 34 Wn. App. 495, 501, 663 P.2d 132, *review denied*, 100 Wn.2d 1005 (1983). Affirmative evidence of intent to deprive an employee of wages, however, is necessary to establish liability under RCW 49.52.050.

[5]Because the Attorney General's office is not part of the University, it is inappropriate to rely, as did the trial court, on the correspondence from that office in determining whether the University reached a consensus on the Social Security eligibility of the class members.

[6]We note the United States Department of Health and Human Services supported the University's deduction of Social Security from part-time, temporary, and student employees occupying positions under a state retirement system.

■ We turn to the class' cross appeal of the trial court's grant of summary judgment in favor of the University on the breach of fiduciary duty, misrepresentation, and non-disclosure claims. The granting of summary judgment is reviewed to ascertain whether the class raises a genuine issue of material fact after viewing the facts and reasonable inferences therefrom in the light most favorable to the non-moving party. *Hansen v. Friend*, 118 Wn.2d 476, 485, 824 P.2d 483 (1992).

■ The class argues a fiduciary relationship existed between the University and the class regarding the calculation and payment of wages. The law recognizes that facts may create a fiduciary relationship between contracting parties. *See Liebergesell v. Evans*, 93 Wn.2d 881, 889-90, 613 P.2d 1170 (1980). Such relationships have been found where one party has superior knowledge and thereby induces reliance in the other party. *See Liebergesell*, 93 Wn.2d at 890-91 (citing *Salter v. Heiser*, 36 Wn.2d 536, 219 P.2d 574 (1950); *Graff v. Geisel*, 39 Wn.2d 131, 234 P.2d 884 (1951); *Gray v. Reeves*, 69 Wash. 374, 125 P. 162 (1912)). *See also Boonstra v. Stevens-Norton, Inc.*, 64 Wn.2d 621, 625, 393 P.2d 287 (1964).

For example, in *Liebergesell*, a widowed schoolteacher became friends with Mr. Kotowski, a state auditor, through the friendship of their daughters. Kotowski encouraged Liebergesell to regard him as a financial counselor, was aware of her reliance on him, and urged her to invest in his business. The court held these facts created an issue of fact whether a fiduciary relationship existed. *Liebergesell*, 93 Wn.2d at 891.

Here, the class asserts it was justified in relying on the University's calculation and payment of wages because the University was in a position of superior knowledge. Although the University may have had superior knowledge as to the applicable federal and state laws governing the calculation and payment of wages, the class fails to raise a genuine issue of fact that the University used this position to *induce* reli-

ance in the class. The trial court properly granted summary judgment in favor of the University on the breach of fiduciary duty claim.

■ The class also asserts the University concealed or failed to disclose only employees in positions eligible for retirement systems coverage were subject to Social Security, and the class employees were not in retirement eligible positions. A precondition for finding liability is knowledge of the facts alleged to have been concealed or not disclosed. *See* Restatement (Second) of Torts § 551 (1977); *Haberman v. WPPSS*, 109 Wn.2d 107, 168, 744 P.2d 1032, 750 P.2d 254 (1987), *appeal dismissed*, 488 U.S. 805 (1988); *Liebergesell*, 93 Wn.2d at 891-92.

In this case, the class fails to raise a genuine issue of material fact that the University reached a consensus or "knew", prior to December 1989, which specific employee job positions were ineligible for retirement and Social Security coverage. The record does contain University interdepartmental memoranda and memoranda from the Attorney General's office discussing this issue, but, again there is no evidence of a consensus.

■ Lastly, the class contends the trial court erred in granting summary judgment on its misrepresentation claim. We disagree. The class fails to raise a genuine issue of material fact that the University had a pecuniary interest in withholding Social Security from the class' wages. *See* Restatement (Second) of Torts § 552(1), (2) (1977) (misrepresentation requires that false information be provided by one who "has a pecuniary interest"); *Haberman*, 109 Wn.2d at 161-62. Here, the University does not have a pecuniary interest in deducting Social Security because it was required to pay matching employer contributions for every deduction made.

We affirm the trial court's grant of summary judgment in favor of the University on the breach of fiduciary duty, nondisclosure, and misrepresentation claims. We reverse the summary judgment in favor of the class for breach of con-

tract and violation of RCW 49.48.010 and direct summary judgment be issued in favor of the University on these claims. We also reverse the trial court's ruling that the University violated RCW 49.52.050(2) and reverse the award of double damages, attorney fees, and costs. We need not address the prejudgment interest issue raised by the University.

ANDERSEN, C.J., and BRACHTENBACH, DURHAM, GUY, JOHNSON, and MADSEN, JJ., concur.

After modification, further reconsideration denied September 21, 1993.