178 P.3d 936 (2008)
Gene CHAMPAGNE, Cary Brown, Roland Knorr, and Christopher Scanlon, individuals and as representatives of a class of Thurston County overtime eligible employees, Petitioners,
v.
THURSTON COUNTY, a political subdivision of the state of Washington, Respondent.
No. 79209-7.
Supreme Court of Washington, En Banc.
Argued September 27, 2007.
Decided February 14, 2008.
*938 William B. Aitchison, Attorney at Law, Mark A. Crabtree, Portland, OR, Hillary H. McClure, Aitchison & Vick Inc., Seattle, WA, for Petitioners.
Jeffrey George Fancher, Attorney at Law, Olympia, WA, Michael Barr King, Talmadge Law Group PLLC, Tukwila, WA, Douglas Edward Smith, Littler Mendelson, Seattle, WA, for Respondent.
Nicholas Broten Straley, Daniel Ford, Columbia Legal Services, Seattle, WA, for Amicus Curiae on behalf of Centro De Ayuda (casa).
Valerie Anne Carlson, King County Bar Association, Seattle, WA, for Amicus Curiae on behalf of King County Bar.
Rebecca A. Smith, National Employment Law Project, Olympia, WA, for Amicus Curiae on behalf of National Employment Law Project.
Joseph Robert Shaeffer, MacDonald Hoague & Bayless, Jeffrey Lowell Needle, Seattle, WA, for Amicus Curiae on behalf of Washington Employment Lawyers Assoc.
FAIRHURST, J.
¶ 1 Thurston County (County) pays its employees for nonregular wages (e.g., overtime wages) at the close of the month subsequent to when the nonregular wages were earned. *939 Petitioners Gene Champagne, Cary Brown, Roland Knorr, and Christopher Scanlon (hereinafter collectively referred to as Champagne) work as corrections officers for the Thurston County Sheriff's Office. Champagne challenges a published Court of Appeals decision that dismissed his claims under the Washington Minimum Wage Act, chapter 49.46 RCW (MWA), wage payment act, chapter 49.48 RCW (WPA), and wage rebate act, chapter 49.52 RCW (WRA) since all wages owed Champagne were eventually paid. He argues that (1) delayed payment of wages beyond the time frame set forth in former WAC 296-128-035 (1989) gives rise to employer liability under the aforementioned statutes and (2) such claims, being statutorily based, are not subject to the claim filing statutes applicable to counties.
¶ 2 We affirm the Court of Appeals but for different reasoning. We hold (1) that delayed payment of wages beyond the timeframe set forth in former WAC 296-128-035 gives rise to employer liability under the WRA but only where such delay is willful, and here it was not willful; (2) that delayed payment of wages does not give rise to employer liability under the MWA; and (3) that the WPA does not apply outside the termination context. Since Champagne lacks a viable cause of action, we decline to reach the issue of whether claims made under the WRA, MWA, or WPA are subject to county claim filing statutes.

I. FACTUAL AND PROCEDURAL HISTORY
¶ 3 The administration of the County payroll system triggered the present controversy. The County pays its employees once a month on the last business day of each month for the regular wages earned that month. Employees who have earned additional compensation such as overtime pay, compensatory time, specialty pay, supervisor pay, or holiday pay (hereinafter collectively referred to as additional pay)[1] must submit a form to the County by the end of the month for processing. The County pays additional pay at the end of the month subsequent to the month in which it is earned.[2] This practice is memorialized in the governing collective bargaining agreement between the County and its employees with respect to compensatory time and wages for overtime.[3] *940 Champagne is employed by the Thurston County Sheriff's Office as a corrections officer and is eligible for additional pay. Champagne asserts that the County's practice of paying additional pay the month after it is earned violates Washington's wage statutes.
¶ 4 On September 17, 2004, Champagne filed suit against the County in Thurston County Superior Court seeking class certification and claiming that the separate payday for additional pay violates the MWA, WPA, and WRA. In his complaint, Champagne prayed for the following relief: (1) twice the amount of additional pay pursuant to the WRA, (2) class certification, (3) attorney fees and costs under all three wage statutes, (4) prejudgment interest, and (5) any other equitable relief as the court deems just. Prior to filing suit, Champagne did not file a claim for damages with the County.
¶ 5 The County moved for summary judgment arguing that Champagne failed to meet the "condition precedent" of filing the claim with the County pursuant to RCW 36.45.010 and chapter 4.96 RCW (hereinafter collectively referred to as nonclaim statutes). Clerk's Papers (CP) at 42. Champagne countered that the nonclaim statutes do not apply to wage-and-hour claims. Visiting Judge Hogan[4] held that Champagne's claims were subject to the nonclaim statutes, granted the County's motion for summary judgment, and dismissed the claim without prejudice. Champagne responded by filing a notice of appeal, submitting a claim for damages with the County, and filing a new lawsuit against the County.[5]
¶ 6 The Court of Appeals, Division Two, affirmed on alternative grounds and did not reach the issue of whether wage-and-hour claims are subject to the conditions set forth in the nonclaim statutes. Champagne v. Thurston County, 134 Wash.App. 515, 520 n. 7, 141 P.3d 72 (2006). Instead, Judge Hunt, writing for a unanimous panel, found that this court's holding in Seattle Professional Engineering Employees Association v. Boeing Co., 139 Wash.2d 824, 991 P.2d 1126, 1 P.3d 578 (2000) (SPEEA) precluded a cause of action for delayed payment of wages.
Correction Officers alleged in their complaint only that they were entitled to double damages under RCW 49.52.070. In so doing, they failed to state an actionable claim because, under Washington's wage-and-hour laws, employees are entitled to damages only where an employer has paid no compensation to an employee. Such is not the case here, however, because, as Correction Officers acknowledge, the County did pay them their due wages.
Champagne, 134 Wash.App. at 519, 141 P.3d 72 (citation omitted).
¶ 7 This court granted Champagne's petition for review. Champagne v. Thurston County, 160 Wash.2d 1010, 161 P.3d 1026 (2007).

II. ISSUE
¶ 8 Does the WRA, MWA, or WPA provide a cause of action for delayed payment of wages?

III. ANALYSIS
¶ 9 This court reviews questions of law de novo. Wingert v. Yellow Freight Sys., Inc., 146 Wash.2d 841, 847, 50 P.3d 256 (2002). "In reviewing an order granting summary judgment, the appellate court engages in the same inquiry as the trial court." Id. Summary judgment is appropriate when "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id.; CR 56(c). The court will consider the evidence in the light most favorable to the nonmoving party drawing *941 all reasonable inferences therefrom. Wingert, 146 Wash.2d at 847, 50 P.3d 256.
¶ 10 This court has described Washington as a "`pioneer'" in assuring payment of wages due an employee. Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett, 146 Wash.2d 29, 35, 42 P.3d 1265 (2002) (quoting Drinkwitz v. Alliant Techsystems, Inc., 140 Wash.2d 291, 300, 996 P.2d 582 (2000)). Toward that end, three wage statutes penalize an employer who willfully withholds wages (WRA), fails to pay the statutory minimum wage (MWA), or fails to pay wages due upon termination of employment (WPA). The court is tasked with construing these laws "`liberally'" in light of the strong public policy to protect workers' rights. Id. at 35, 42 P.3d 1265 (quoting Ellerman v. Centerpoint Prepress, Inc., 143 Wash.2d 514, 520, 22 P.3d 795 (2001)).
A. Does the amended version of WAC 296-128-035 apply retroactively?
¶ 11 Pursuant to the MWA, WAC 296-128-035 designates the time by which an employer must pay all wages due.[6] Champagne relies upon the rule as it existed at the time he filed his suit in September 2004. In its entirety, former WAC 296-128-035 provided:
All wages due shall be paid at no longer than monthly intervals to each employee on established regular pay days. To facilitate bookkeeping, an employer may implement a regular payroll system in which wages from up to seven days before pay day may be withheld from the pay period covered and included in the next pay period.
Champagne maintains that the County violated former WAC 296-128-035 since the County paid additional pay the month after it was earned. The County, however, urges the court to apply the amended WAC retroactively.
¶ 12 Current WAC 296-128-035 is similar to its former version but includes additional direction. The current WAC provision states, "[a]n employer shall pay all wages owed to an employee on an established regular pay day at no longer than monthly payment intervals." WAC 296-128-035(3). The additional direction provides:
An employer shall pay overtime wages owed to an employee on the regular pay day for the pay period in which the overtime wages were earned. If the correct amount of overtime wages cannot be determined until after such regular pay day, the employer may establish a separate pay day for overtime wages; provided, that the payment of overtime wages may not be delayed for a period longer than that which is reasonably necessary for the employer to compute and arrange for payment of the amount due, and overtime wages must be paid by the regular pay day following the next pay period.
WAC 296-128-035(6). Furthermore, the rule may be "superseded by a collective bargaining agreement" subject to certain conditions.[7] WAC 296-128-035(8).
*942 ¶ 13 Champagne concedes that he lacks a cause of action under current WAC 296-128-035 given that sections six and eight would permit the month delay for additional pay. Therefore, the court must determine whether the former or current WAC provisions apply. In other words, is the amended language retroactive?
¶ 14 Generally, we presume prospective application of newly amended administrative regulations, particularly where the amendments change substantive rights. In re Pers. Restraint of Shepard, 127 Wash.2d 185, 193, 898 P.2d 828 (1995). However, courts may apply an amendment retroactively if either (1) the agency intended the amendment to apply retroactively, (2) the effect of the amendment is remedial or curative, or (3) the amendment serves to clarify the purpose of the existing rule. Magula v. Benton Franklin Title Co., 131 Wash.2d 171, 181-82, 930 P.2d 307 (1997); see also Letourneau v. Dep't of Licensing, 131 Wash.App. 657, 665-66, 128 P.3d 647 (2006) (applying the above guidelines to determine whether a WAC rule should apply retroactively).
¶ 15 Both parties acknowledge that "[a] regulation may be given retroactive effect where its purpose is to clarify rather than change the law." Reply in Support of Pet. for Rev. at 11; Suppl. Br. of Resp't at 4 n. 2 (citing Magula, 131 Wash.2d at 182, 930 P.2d 307). However, Champagne urges the court to apply the amendments prospectively, arguing only that the amendments affect a "substantive or vested right." Reply in Support of Pet. for Rev. at 11 (citing Letourneau, 131 Wash.App. at 665, 128 P.3d 647).
¶ 16 Thus, the issue is whether the rule revision affects a substantive or vested right. The proposed rule statement put forth by the Department of Labor and Industries suggests that the changes were intended to "clarify rule language without changing its effect" pursuant to RCW 34.05.310(4)(d). Wash. St. Reg. XX-XX-XXX. At first blush, this would seem to fit under the exception carved out in Magula. However, the actual effects of the amendments go beyond mere clarification. Current WAC 296-128-035(6) permits the payment of additional pay in intervals longer than one month. This practice would have violated the plain language of the previous rule and, thus, denotes a change in substantive rights.[8] Further, the effect of the amendment is not remedial, which similarly militates against retroactive application. Accordingly, we hold that amended WAC 296-128-035 applies prospectively only, and we will apply former WAC 296-128-035 as it existed when the complaint was filed in 2004.
B. Does the WRA provide a remedy for wages untimely paid in violation of former WAC 296-128-035?
¶ 17 Champagne claims that the County's practice of paying additional pay at *943 the end of the month subsequent to when it was earned violates the WRA. The WRA states, "[a]ny employer . . . who . . . [w]ilfully and with intent to deprive the employee of any part of his wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract . . . [s]hall be guilty of a misdemeanor." RCW 49.52.050(2). A WAC provision may also provide the basis for a WRA action since agency regulations carry the force of law. White v. Salvation Army, 118 Wash.App. 272, 287-88, 75 P.3d 990 (2003) (citing Wingert, 146 Wash.2d at 848, 50 P.3d 256).[9] Pursuant to the WRA, an employer's violation of an agency rule must be willful and with the intent to deprive its employee of wages.
¶ 18 A willful withholding under RCW 49.52.050(2) is a basis for exemplary damages in a civil action of "twice the amount of the wages unlawfully rebated or withheld . . . together with costs of suit and a reasonable sum for attorney's fees." RCW 49.52.070.[10] This court defines a willful withholding as "`the result of knowing and intentional action and not the result of a bona fide dispute as to the obligation of payment.'" Wingert, 146 Wash.2d at 849, 50 P.3d 256 (quoting Chelan County Deputy Sheriffs' Ass'n v. County of Chelan, 109 Wash.2d 282, 300, 745 P.2d 1 (1987)). A bona fide dispute is a "`fairly debatable' dispute over whether an employment relationship exists, or whether all or a portion of the wages must be paid." Schilling v. Radio Holdings, Inc., 136 Wash.2d 152, 161-62, 961 P.2d 371 (1998) (citing Cannon v. City of Moses Lake, 35 Wash.App. 120, 125, 663 P.2d 865 (1983); Moran v. Stowell, 45 Wash.App. 70, 81, 724 P.2d 396 (1986); Chelan County Deputy Sheriffs' Ass'n, 109 Wash.2d at 301, 745 P.2d 1).
¶ 19 Determining willfulness is a question of fact reviewed under the substantial evidence standard. Pope v. Univ. of Wash., 121 Wash.2d 479, 490, 852 P.2d 1055, 871 P.2d 590 (1993) (citing Lillig v. Becton-Dickinson, 105 Wash.2d 653, 660, 717 P.2d 1371 (1986)). However, where no dispute exists as to the material facts, the court may dispose of such questions on review of summary judgment. Schilling, 136 Wash.2d at 160, 961 P.2d 371; CR 56(c).[11]
¶ 20 In the present case, neither party disputes the material facts. The County's *944 regular practice is to pay its employees additional pay at the end of the month subsequent to the month in which it is earned. The lag time violated former WAC 296-128-035, which required an employer to pay its employee at no longer than monthly intervals. However, this system complies with the provisions in the governing collective bargaining agreement with respect to overtime wages and compensatory time. Further, Champagne does not allege that bad faith or animus motivated the creation or administration of the additional pay system. Accordingly, the record lacks the requisite substantial evidence that gives rise to a finding of willful withholding on the part of the County. This is more likely a bona fide dispute over whether the wages were due by a certain time.
¶ 21 We now turn to the disposition of the claim by the Court of Appeals and the County's argument. The Court of Appeals held, and the County argues, that Champagne may not assert claims under the WRA since the wages due were eventually paid. The Court of Appeals determined that Champagne lacked a viable action under the WRA based upon this court's language in SPEEA. In SPEEA, we described the differing functions of the WRA, MWA, and WPA. We then proceeded to discuss the implications of the MWA. "The import of this statutory scheme is that in circumstances where an employer paid no compensation whatsoever to an employee, the employee, if not otherwise exempt under the [MWA], could recover wages representing the difference between the statutory minimum wage and what was actually paid." SPEEA, 139 Wash.2d at 831, 991 P.2d 1126 (citing RCW 49.46.090(1)). The Court of Appeals seized upon this language in dismissing Champagne's wage claim.
¶ 22 The Court of Appeals erred in two respects. First, it took the language from SPEEA out of context. The SPEEA court recognized that a plaintiff could recover WRA damages in addition to the unpaid wages recoverable under the MWA.[12] 139 Wash.2d at 831, 991 P.2d 1126. However, the court addressed only the extent of recovery available under the MWA, not the WRA, because the plaintiffs had not pursued remedies under the WRA. Id. Conversely, since Champagne has pursued remedies under the WRA, the Court of Appeals should have limited its application of SPEEA to Champagne's MWA claim and not his WRA claim.
¶ 23 Second, the Court of Appeals erred by concluding that a violation of former WAC 296-128-035 triggers the remedies available in the MWA (chapter 49.46 RCW) but not the WRA (chapter 49.52 RCW) or WRA (chapter 49.48 RCW). Champagne, 134 Wash.App. at 520 n. 5, 141 P.3d 72 (former WAC 296-128-035 "applies only to violations of minimum wage laws under chapter 49.46 RCW, not chapters 49.48 and 49.52 RCW"). This conclusion is inconsistent with the plain language of the WRA, which penalizes an employer who willfully withholds wages due under "any statute, ordinance, or contract," RCW 49.52.050(2), including substantive agency regulations. White, 118 Wash.App. at 287-88, 75 P.3d 990. Accordingly, the Court of Appeals misapplied the reasoning in SPEEA to dismiss Champagne's WRA claim.
¶ 24 Therefore, we affirm the Court of Appeals on different grounds.[13] We hold that former WAC 296-128-035 provides a basis for liability if the undisputed material facts support a finding that the violation was willful. Here, we find that the County did not act willfully since the disagreement over payment of wages is a bona fide dispute.
*945 C. Does Champagne's prayer for relief limit review to the WRA?
¶ 25 Washington follows notice pleading rules and simply requires a "concise statement of the claim and the relief sought." Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wash.2d 342, 352, 144 P.3d 276 (2006); CR 8(a). A complaint fails to meet this standard if it neglects to give the opposing party "fair notice." Pac. Nw. Shooting Park, 158 Wash.2d at 352, 144 P.3d 276 (citing Dewey v. Tacoma Sch. Dist. No. 10, 95 Wash.App. 18, 26, 974 P.2d 847 (1999) (finding that a party may not later insert an argument into its briefs that was not first pleaded)).
¶ 26 The Court of Appeals excluded Champagne's claims under the MWA (chapter 49.46 RCW) and WPA (chapter 49.48 RCW) for failure to properly plead them in the complaint. "Although Correction Officers also alleged violations of chapters 49.46 and 49.48 RCW, they failed to request any form of relief under these other wage statutes that differs substantively from chapter 49.52 RCW relief." Champagne, 134 Wash. App. at 520 n. 5, 141 P.3d 72 (citing SPEEA, 139 Wash.2d at 831, 835, 991 P.2d 1126). Again, SPEEA is factually distinct from the present case. In SPEEA, the court concluded that appellants had limited the scope of review to the MWA since they "abandoned chapter 49.52 RCW and instead focused on the [MWA] and various common law theories of recovery." 139 Wash.2d at 831 n. 3, 991 P.2d 1126. Here, Champagne has preserved his claims under all three wage statutes.
¶ 27 The County argues that Champagne's prayer for relief seeking damages solely under the WRA effectively excludes the MWA and WPA from the scope of this court's review. The County reminds the court that notice pleading standards have limits as defined in Berge v. Gorton, 88 Wash.2d 756, 762, 567 P.2d 187 (1977), which states, "[e]ven our liberal rules of pleading require a complaint to contain direct allegations sufficient to give notice to the court and the opponent of the nature of the plaintiff's claim." The County also argues that this court should honor Champagne's "intentional" omission of a request for damages under the MWA and WPA. Suppl. Br. of Resp't at 8.
¶ 28 Champagne argues that the totality of his complaint meets the notice pleading rules. He argues that the reference to relief contained within each separate cause of action puts the County on notice of his MWA and WPA claims.[14] He also contends that the concluding phrase of his prayer for relief ("[f]or such other relief as the Court deems just and equitable"[15]) sufficiently apprises *946 the County of his request for relief under the MWA and WPA. Reply in Support of Pet. for Rev. at 5.
¶ 29 Champagne's complaint does not transgress the liberal bounds of the notice pleading standard. The County argues persuasively that a generic prayer for relief does not provide adequate notice to the opposing party of a particular remedy. However, the entirety of Champagne's complaint supplies direct allegations sufficient to give notice to both the court and the County that Champagne sought relief under the MWA, WPA, and WRA. See CP at 6-7. Furthermore, Champagne's allegedly intentional omission of a particular prayer for relief is immaterial. This court has found that the pleader's intention when drafting the complaint does not control the court's scope of review. Berge, 88 Wash.2d at 763, 567 P.2d 187.[16]
¶ 30 We hold that the totality of Champagne's complaint comports with notice pleading rules and that review of the causes of action under the MWA and WPA in addition to the WRA is appropriate.
D. Does delayed payment of wages provide a cause of action under the MWA?
¶ 31 The MWA provides in pertinent part:
(1) Any employer who pays any employee less than wages to which such employee is entitled under or by virtue of this chapter, shall be liable to such employee affected for the full amount of such wage rate, less any amount actually paid to such employee by the employer, and for costs and such reasonable attorney's fees as may be allowed by the court. Any agreement between such employee and the employer to work for less than such wage rate shall be no defense to such action.
RCW 49.46.090.
¶ 32 Champagne encourages the court to consider by analogy federal interpretations of section 207 of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 (FLSA), since the FLSA provided the model for the MWA. Champagne cites several district and circuit court cases for the proposition that a delay in payment is tantamount to a failure to pay. However, this analogy is misleading given that federal courts have distinguished the treatment of additional pay from regular pay under the FLSA because the FLSA permits an employer to "delay" payment of overtime to allow for processing.[17]See O'Brien v. Town of Agawam, 350 F.3d 279, 298 (1st Cir.2003) (noting that the Secretary of Labor has interpreted the FLSA to allow delayed payment of overtime wages to allow for processing). Similarly, the Court of Appeals, Division Two, in Clark v. City of Kent, 136 Wash.App. 668, 150 P.3d 161 (2007), surveyed federal case law and found that "[f]ederal law allows for some `reasonable' amount of processing or lag time under the FLSA for irregular pay such as overtime." Id. at 677, 150 P.3d 161 (distinguishing Biggs v. Wilson, 1 F.3d 1537 (9th Cir.1993), which held that delayed payment of regular wages violated the FLSA) (citing 29 C.F.R. § 778.106). Thus, Champagne's reliance upon federal law construing the FLSA is misplaced.
¶ 33 The County argues and the Court of Appeals concluded that SPEEA addressed this issue and determined that since the additional pay was eventually paid, no *947 liability exists under the MWA. In SPEEA, the court held that "in circumstances where an employer paid no compensation whatsoever to an employee, the employee, if not otherwise exempt under the [MWA], could recover wages representing the difference between the statutory minimum wage and what was actually paid." 139 Wash.2d at 831, 991 P.2d 1126.
¶ 34 Consistent with our holding in SPEEA, we hold that the MWA does not provide a cause of action where the employer has actually paid all wages due an employee. Champagne was paid all due regular and additional pay and, thus, does not have a cause of action under the MWA.
E. Does delayed payment of wages give rise to liability under the WPA?
¶ 35 In pertinent part, the WPA provides that an employer may not withhold wages due an employee at the termination of employment unless required by law, by agreement between the employer and employee, or for medical services. RCW 49.48.010. The WPA also contains a proviso that renders a governing and contrary "labor-management agreement" controlling authority on the issue of payment. Id.
¶ 36 Champagne focuses on the following language of the WPA to establish his claim: "It shall be unlawful for any employer to withhold or divert any portion of an employee's wages." Pet. for Rev. at 13-14; RCW 49.48.010. He further argues that "employees who have had their wages unlawfully withheld in violation of RCW 49.48.010 have a private right of action against the employer." Pet. for Rev. at 14 (citing Wingert, 146 Wash.2d at 850, 50 P.3d 256).
¶ 37 The County notes that the WPA is limited in its application. As its language suggests, RCW 49.48.010 applies in the context of termination. Further, RCW 49.48.010 has not been applied to nontermination cases. Pope, 121 Wash.2d at 489, 852 P.2d 1055 (holding that the trial court erred in granting summary judgment where the plaintiffs had not pleaded that the employer defendant made "improper deductions" at the end of the employment relationship). Like the employees in Pope, Champagne is not claiming that the County made improper deductions at the time of termination. Champagne is a current employee of the County and, therefore, his claim is beyond the scope of RCW 49.48.010.
¶ 38 Furthermore, a labor-management agreement may trump the provisions of the WPA. RCW 49.48.010. Here, the governing collective bargaining agreement allows for a delay in payment of overtime wages and compensatory time. CP at 135, 188. Therefore, even if RCW 49.48.010 applied (which it does not because Champagne is a current employee), the statute would bar its application to damages arising from delayed payment of overtime wages and compensatory time.

IV. CONCLUSION
¶ 39 We affirm the Court of Appeals but on different grounds. First, we hold that "delayed" payment of wages beyond the timeframe set forth in former WAC 296-128-035 does give rise to employer liability under the WRA but only where such delay is "willful," and here it was not willful. Second, we hold that "delayed" payment of wages does not give rise to employer liability under the MWA. Finally, we hold that the WPA does not apply outside the termination context.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, Justice SUSAN OWENS, Justice JAMES M. JOHNSON, Justice RICHARD B. SANDERS. Justice TOM CHAMBERS, and BOBBE J. BRIDGE, Justice Pro Tem.
MADSEN, J. (concurring).
¶ 40 While I agree with the result reached by the majority, I would reach that result through a different analysis. WAC 296-128-035, as it existed at the time the petitioners' wages were allegedly delayed in violation of the rule and RCW 49.52.050(2), stated in part that "[a]ll wages due shall be paid at no longer than monthly intervals . . . on established regular pay days." Former WAC 296-128-035 (1989) (emphasis added). The petitioners were at that time subject to the provisions of a collective bargaining agreement *948 under which an employee had the "option to request either overtime compensation or compensatory time" and under which it would "normally be the practice to pay overtime in money during the pay period following the pay period in which overtime is worked." Clerk's Papers at 135.
¶ 41 The employees and the employer had thus agreed that overtime wages would not be due in the pay period in which they were earned, but would instead be paid in the following pay period. Accordingly, by express contractual agreement, payment for overtime was not part of "all wages due" within the meaning of former WAC 296-128-035 for the pay period in which the overtime was worked (and, it follows, not subject to the seven-day shift allowed by the rule). Instead, provided they were paid in the following pay period, they were paid when due, i.e., in a timely manner. In contrast, an employee's regular monthly salary was part of "all wages due" for the pay period in which the employee's regular hours were worked.
¶ 42 This approach accords with RCW 49.52.050(2) and RCW 49.52.070, the statutes under which the petitioners seek exemplary damages. RCW 49.52.050(2) makes it unlawful for an employer to "[w]ilfully and with intent to deprive the employee of any part of his wages . . . pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract." (Emphasis added.) Here, respondent Thurston County's obligation to pay amounts due its employees arose under the collective bargaining agreement. By contract overtime wages were to be paid in the pay period following the period in which earned; overtime wages were not due under the contract in the pay period in which earned.[1] Thus, within the meaning of RCW 49.52.050(2), no overtime wages were unlawfully withheld. It follows that the employees have no cause of action under RCW 49.52.070,[2] whether under a theory of violation of WAC 296-128-035 or violation of RCW 49.52.050(2).
¶ 43 Since the petitioners' received their wages in accordance with their collective bargaining agreement, they were paid "all wages due" as required by former WAC 296-128-035[3] and they have no cause of action under RCW 49.52.070. For these reasons, summary judgment in favor of Thurston County was appropriate and the trial court and the Court of Appeals are properly affirmed.
¶ 44 Finally, I comment briefly on the majority's analysis. The majority focuses its analysis on the question of a bona fide dispute as to whether wages were due within the time period set out in WAC 296-128-035, and treats this as a factual question. The material facts here are undisputed, however, and the only question, which is dispositive, is whether Thurston County acted "with intent to deprive the employee[s] of any part of [their] wages." RCW 49.52.050(2). In light *949 of the collective bargaining agreement, the answer is no.[4]
¶ 45 I concur in the result reached by the majority.
WE CONCUR: Justice CHARLES W. JOHNSON.
NOTES
[1] The concurrence concludes that Champagne lacks a viable cause of action because the collective bargaining agreement provided for delayed payment of overtime compensation and compensatory time. Concurrence at 948. However, this assessment does not address all of the wages at issue in this case. Unlike overtime pay and compensatory time, the collective bargaining agreement did not provide for a delay in the payment of specialty pay, supervisor pay, or holiday pay. The terms of the agreement fails to resolve this dispute with respect to all forms of additional pay.

We disagree with the concurrence's contention that the collective bargaining agreement provision addressing overtime payment is "broad enough" to establish a delayed pay date for all forms of payment at issue in this case. Concurrence at 948 n. 1. With respect to overtime pay, the agreement provides that "[a]ll employees shall be paid overtime at time and one-half for all hours worked in excess of their regularly scheduled eight (8) or nine (9) hour shift." CP at 12. Overtime pay is based upon the number of hours an employee works in excess of a regular shift. The other forms of payment at issue here are not awarded based upon the number of hours worked in excess of a regular shift, and therefore the agreement's overtime pay provision does not properly encompass them.
For example, supervisor pay and specialty pay refer to a temporary raise in the corrections officer's regular rate of pay based upon specialized shift assignments. CP at 23. A corrections officer assigned to work as a shift supervisor earns an additional five percent per hour for that shift. Id. Similarly, a corrections officer earns an additional three percent for special duty assignments. Unlike overtime pay, these wage adjustments are not contingent upon hours worked in excess of a regular shift. Accordingly, we do not view the overtime provision as sufficiently broad to encompass these forms of payment.
[2] The County's payroll system provides for one regular payday on the last business day of the month. Thus, the additional pay is paid on the next regular payday after the month in which the additional pay is earned.
[3] The 2003-2004 and 2005-2007 collective bargaining agreements between the County and Local 618-CD of the Washington State Council of County and City Employees and the American Federation of State, County, and Municipal Employees, AFL-CIO, provide "[a]t the time overtime is worked, the employee has the option to request either overtime compensation or compensatory time. It shall normally be the practice to pay overtime in money during the pay period following the pay period in which overtime is worked." Clerk's Papers (CP) at 135 and 188. For example, overtime earned in March would be paid on the last business day in April.
[4] The Thurston County Superior Court bench recused itself.
[5] The new case is based upon the same facts and contains the same allegations as the original complaint filed in September 2004. The suit prays for the same relief of double damages, prejudgment interest, costs, and attorney fees. However, Champagne argues that refiling has the effect of denying him 13 months of potential double damages based on overtime pay and attorney fees through October 31, 2005.
[6] The concurrence maintains that Champagne's overtime wages became due according to the timeline set forth in the governing collective bargaining agreement, and concludes that the County did not violate former WAC 296-128-035. Concurrence at 948. We decline to adopt this rationale for two reasons. First, as noted earlier, the collective bargaining agreement designates a delayed payment timeline for overtime pay and compensatory time but does not provide for a delay in the payment of specialty, supervisor, or holiday pay. Second, former WAC 296-128-035 specifies that all wages due must be paid at "no longer than monthly intervals" and, contrary to the regulation in its current form, it does not provide that a collective bargaining agreement or other employment contract may supersede the regulation. Therefore, the collective bargaining agreement conflicts with, and is subordinate to, the regulation.

We agree with the concurrence that the governing statute, RCW 49.52.050(2), shows that a contract may establish an employer's obligation to pay wages. Concurrence at 948 n. 3. However, RCW 49.52.050(2) also establishes an employer's obligation to pay wages in conformance with any statute or ordinance. Further, we have recognized that an agency regulation may also provide a basis for payment under RCW 49.52.050(2) since agency regulations carry the force of law. White v. Salvation Army, 118 Wash.App. 272, 287-88, 75 P.3d 990 (2003) (citing Wingert, 146 Wash.2d at 848, 50 P.3d 256). In short, RCW 49.52.050(2) does not relieve an employer of abiding by agency regulation by drafting a conflicting contract provision.
[7] These rules may be superseded by a collective bargaining agreement negotiated under the National Labor Relations Act, 29 U.S.C. [§§ 151-169], the Public Employees' Bargaining Act, RCW 41.56.010 [-.900], or the Personnel System Reform Act [of 2002, ch. 41.80 RCW], if the terms of, or recognized custom and practice under, the collective bargaining agreement prescribe specific payment interval requirements for employees covered by the collective bargaining agreement; provided, that:

(a) All regular wages (whether paid on an hourly, salary, commission, piece rate, or other basis) shall be paid to employees covered by the collective bargaining agreement ("covered employees") at no longer than monthly intervals;
(b) All other wages (including overtime, bonus pay, and other categories of specialty pay in addition to regular wages) are paid in accordance with the payment interval requirements applicable to covered employees under the terms of, or recognized custom and practice under, the collective bargaining agreement; and
(c) The employer pays regular wages to covered employees at no less than the applicable minimum wage rate.
WAC 296-128-035(8).
[8] The revisions to former WAC 296-128-035 were inspired by incorporating existing agency policy into rule. Wash. St. Reg. XX-XX-XXX. An agency may put forth policy statements to inform the public of its "current approach . . . to implementation of a statute or other provision of law." RCW 34.05.010(15). Such a statement is "advisory only," and an agency is "encouraged to convert long-standing interpretive and policy statements into rules." RCW 34.05.230(1). This court likewise held that, "[u]nlike administrative rules and other formally promulgated agency regulations, internal policies and directives generally do not create law." Joyce v. Dep't of Corrs., 155 Wash.2d 306, 323, 119 P.3d 825 (2005) (citing Melville v. State, 115 Wash.2d 34, 793 P.2d 952 (1990)). Therefore, prior to their incorporation into the WAC, the agency guidelines from the policy statement were advisory only.
[9] In Wingert, we held that double damages under the WRA were appropriate based upon a WAC rule violation since "`properly promulgated, substantive agency regulations have the force and effect of law.'" 146 Wash.2d at 848, 50 P.3d 256 (internal quotation marks omitted) (quoting Manor v. Nestle Food Co., 131 Wash.2d 439, 445, 932 P.2d 628, 945 P.2d 1119 (1997)). Accordingly, we determined that a violation of WAC 296-126-092 relating to rest periods constituted a basis to award damages under the WRA. However, the WRA is not included as statutory authority for WAC 296-126-092. Instead, authority for the rule is found in chapter 49.12 RCW. WAC 296-126-001. Similarly, the WRA is not listed as statutory authority for the rule Champagne cites, former WAC 296-128-035. Instead, former WAC 296-128-035 lists the following statutes as its authority: RCW 43.22.270, 49.12.020, 49.12.091, 49.12.050, 49.46.020, and 49.46.070. Following the reasoning in Wingert, we find that former WAC 296-128-035 was properly promulgated and therefore carries the force of law. Violations of the rule may trigger the remedies available under the WRA even though the WRA is not listed among the statutory authority for WAC 296-128-035.
[10] The statute continues, "PROVIDED, HOWEVER, That the benefits of this section shall not be available to any employee who has knowingly submitted to such violations." RCW 49.52.070. One might argue that the collective bargaining agreement governing the terms and conditions of Champagne's employment with the County constitutes a knowing submission to an alleged willful withholding. However, no Washington court has found that a plaintiff knowingly submitted to a willful violation of the WRA based upon the existence of a collective bargaining agreement.
[11] The concurrence departs from the established analysis for determining willfulness under the WRA and concludes that the collective bargaining agreement which provides for delayed payment of overtime compensation singularly negates a finding that the County acted with "intent to deprive." Concurrence at 948; RCW 49.52.050(2). We think it is premature to adopt this position given the procedural posture of this case. The trial court granted the County's motion for summary judgment based upon issues unrelated to those before the court at present. It granted summary judgment to the County due to Champagne's failure to comply with the nonclaim statutes. As a result, the parties lacked an opportunity to conduct discovery on the issue of whether the County acted "with intent to deprive" Champagne of wages due.
[12] This observation is supported by the variant language of the MWA and WRA. The MWA contains language that mitigates an employer's liability for the wages "actually paid" to the employee. RCW 49.46.090(1). The WRA, however, does not provide for a lessening of liability based upon wages eventually paid but instead assigns exemplary damages based upon the employer's willful withholding. RCW 49.52.070.
[13] We agree with Champagne that the Court of Appeals decision would allow an employer to "indefinitely delay paying its employees the wages that the employees have earned" as long as the wages are eventually paid. Suppl. Br. of Pet'rs at 10. While we are not faced with such a situation at present, our holding does not foreclose the availability of damages under the WRA where an employer eventually pays its employees but a court determines that the employer withheld the wages willfully and with the intent to deprive the employees of the wages due.
[14] The complaint asserts the following causes of action:

4.2 Defendant Thurston County's action in failing to pay the due and payable wage payments violates the Minimum Wage Act as interpreted by WAC 296-128-035 which provides, inter alia, that all wages due shall be paid at no longer than monthly intervals to each employee on established regular pay days.
4.3 Defendant Thurston County's action in failing to pay the due and payable wage payments on a timely basis entitles the Plaintiffs to their costs and reasonable attorneys' fees under RCW 49.46.090 and applicable law.
. . .
5.3 Defendant Thurston County's action in failing to pay the due and payable wage payments entitles the Plaintiffs to their reasonable attorneys' fees under RCW 49.48.030 and applicable law.
. . .
6.4 Defendant Thurston County's action in willfully failing to pay the due and payable wage payments entitles each of the Plaintiffs to judgment for twice the amount of wages wrongfully withheld from them, together with their joint costs of suit and reasonable attorneys' fees under RCW 49.52.070 and applicable law.
CP at 6-7.
[15] The prayer for relief provides in full:

WHEREFORE, Plaintiffs pray to this Court for the following relief:
1. For the award of twice the amount of the wages payments wrongfully withheld, pursuant to RCW 49.52.070;
2. For an order confirming that Thurston County overtime eligible employees be treated as a class for the purposes of CR 23 in these proceedings;
3. For an order confirming that Gene Champagne, Cary Brown, Roland Knorr, and Christopher Scanlon are qualified and shall act as representatives of the certified class;
4. For the Plaintiffs attorneys' fees and costs under applicable law, RCW 49.46.090, 49.48.030, 49.52.070 as well as under the Court's equitable power;
5. For an award of prejudgment interest as allowed by law; and
6. For such other relief as the Court deems just and equitable.
CP at 7-8.
[16] "[T]he complaint, and other relief-claiming pleadings need not state with precision all elements that give rise to a legal basis for recovery as long as fair notice of the nature of the action is provided. However, the complaint must contain . . . direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader."

Berge, 88 Wash.2d at 763, 567 P.2d 187 (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 120 (1969)).
[17] When the correct amount of overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made.

29 C.F.R. § 778.106.
[1] The majority maintains that not all forms of pay in addition to regular monthly salary come within the contractual provision. However, the provision is broad enough to encompass all pay over and above regular monthly wages, and the parties' conduct under the agreement accords with this construction of the contract.
[2] RCW 49.52.070 provides for a civil cause of action against an employer violating RCW 49.52.050(2) and recovery of exemplary damages of twice the amount of wages unlawfully withheld.
[3] The majority goes to great lengths to find a violation of WAC 296-128-035 rather than to give effect to the bargained for agreement of the parties as to what wages are due. The majority says that a collective bargaining agreement could not provide for any delay in payment and could not "supersede" former WAC 296-128-035, and that the collective bargaining agreement here conflicts with the rule and therefore is subordinate to it. This analysis ignores RCW 49.52.050(2), the governing statute, under which an employer's obligation to pay wages may be established by contract, and the specific language in former WAC 296-128-035, which provides only that "wages due" must be paid according to the timing set out in the rule. If a collective bargaining agreement establishes that an employer is not obligated to pay certain types of wages during the regular pay period, as is true here, then no wages of this type are "wages due." Accordingly, the collective bargaining agreement providing for delayed payment does not violate the former rule, regardless of the fact that the former rule did not speak of contractual provisions for payment of additional pay in intervals longer than one month. The contract is not "subordinate" to the rule.
[4] Although the majority states that this conclusion is premature, it also states the principle that when there is no dispute as to material facts, a court may dispose of questions such as a determination of willfulness. Majority at 943-44. The majority agrees that the material facts are undisputed. Id. at 943. Accordingly, it is not premature to conclude as a matter of law that the employer did not act willfully with intent to deprive the employee of wages if the employer paid amounts due in accord with the parties' collective bargaining agreement.