CROWELL (POTTER v.). See Case No. 11,323.

CROWELL, The STEPHEN. See Case No. 13,362.

___

## Case No. 3,447.

### CROWELL v. UNITED STATES.

[21 Law Rep. 466.]

Circuit Court, D. Massachusetts. May Term, 1856.

#### FISHING BOUNTY — CONTRACT BETWEEN MASTER AND CREW—UNAUTHORIZED PAYMENT.

1. No fishing vessel is entitled to bounty unless the contract actually made between skipper and fishermen be such as by statute is made a condition precedent thereto.

2. Where, in addition to the usual written agreement to go on shares, the skipper made a private verbal bargain with the crew, to purchase their shares at a fixed price, it was *held* that this destroyed the right to bounty by leaving an important part of the contract in parol. It seems that such a contract in writing would not be a compliance with the requirements of the law.

3. A payment of bounty by a collector without the production of such a shipping paper as is required by law, although such paper exists, is a payment without authority, and may be recovered back.

[Error to the district court of the United States for the district of Massachusetts.

[Action at law brought by the United

States against David Crowell to recover back moneys received by defendant as fishing bounty. There was a judgment for plaintiff, and defendant brings error.]

T. K. Lothrop, for plaintiff.
Mr. Hallett, Dist. Atty.; contra.

CURTIS, Circuit Justice. This is a writ of error to the district court in an action of assumpsit for money had and received, brought by the United States to recover from the defendant money alleged to have been wrongfully received by him from the collector of the customs for the port of Salem, as and for fishing bounty. A bill of exceptions was taken by the defendant to certain rulings of the court at the trial, and, a verdict having been found for the plaintiff, the defendant has brought the record here by a writ of error. The first error assigned is, that the judge refused to instruct the jury, on the prayer of the defendant to that effect, that the written agreement signed by the fishermen, to go on shares, was not avoided by a private verbal bargain with the master for the sale and purchase by him of the shares at a fixed rate per thousand fish, as neither the vessel nor the owners were bound by such a bargain, and it did not impair the right of the vessel to bounty. The eighth section of the act of congress of July 29, 1813 (3 Stat. 52), is as follows: "That no ship or vessel of twenty tons or upwards, employed as aforesaid, shall be entitled to the allowance granted by this act, unless the skipper or master thereof shall, before he proceeds on any fishing voyage, make an agreement in writing or in print, with every fisherman employed therein, according to the provisions of the act entitled 'An' act for the government of persons in certain fisheries.'" The first section of that act (3 Stat. 2), requires the written or printed agreement to express, "that the fish or the proceeds of such fishing voyage or voyages, which may appertain to the fishermen, shall be divided among them in proportion to the quantities or number of said fish which they may respectively have caught; which agreement shall be endorsed or countersigned by the owner of such fishing vessel or his agent."

The instruction prayed for assumes that the real and true agreement made by the master with the fishermen was not wholly in writing or print; that in one material particular the actual agreement rested in parol, —that particular being that the fishermen were not to have their shares of the fish specifically delivered to them as their own property, nor were they to have their part of the actual proceeds of the voyage divided among them, but, in lieu of the latter, they were to have an agreed sum for each fish to which they would have been entitled if their shares of the fish had been specifically delivered to them. In other words, the fishermen's part of the proceeds of the voyage

was not to be paid as the written or printed contract provided; but, in lieu thereof, they were to receive an agreed sum for each of their fish.

It has been argued that there is nothing in such an agreement inconsistent with the policy of the law, and that it is beneficial to the men, and is a lawful substitute for the fish, or the proceeds of the voyage. If this were conceded, it would not advance the argument; for it would still remain true that the agreement made was not in writing or print, signed by the master, and countersigned by the owner or agent of the vessel, and therefore, upon the express words of the law, there can be no title to bounty. And whatever may be said of the want of authority of the master, as between him and the owners, to make such a contract, cannot affect this case; for the sole question here is, whether the master did make such a contract, in writing or print, with the fishermen, as the law makes a condition precedent to the right to bounty. If he did not, it is immaterial whether he acted with or without authority from the owners. The title to bounty depends on his performance of this requirement; and whether he did right or wrong towards his owners in failing to perform it, is of no importance. Nor can I assent to the position that if this actual contract had all been expressed in writing, or in print, it would have been a compliance with the requirements of the law.

In the most favorable view which can be taken of it, it substitutes a mode of ascertaining the value of the fishermen's lays, materially different from that pointed out by the act of congress, and different from that in which the value of the owners' shares are ascertained,—and that is by actual sales in the market. I cannot admit that fishermen would be in as favorable a position, when bargaining with the skipper for the value of their fish before the commencement of the voyage, as they would be if they had the benefit of the skill and knowledge of business of the owners or the agent in selling the fish in the market; and if such contracts were allowed, the fishermen would, universally, I fear, be deprived of this advantage. But I do not pause to examine this more fully, because it is enough to say that such a contract is not within the provisions of the act of congress, and consequently bounty cannot be claimed when it is made.

The next exception raises the question whether the mere nonproduction of a shipping paper to the collector, before he paid the bounty, assuming that a lawful paper existed, would enable the United States to recover back the money paid. It is argued that the title to the bounty depends on the existence of certain facts, and not upon the kind or amount of proof of those facts produced before the collector. But it must be remembered that when an officer of the United States pays the public money to an

individual, he confers no title to that money, unless he paid it in the lawful exercise of his official power. If he exceeded that power, the money may be recovered back. And he does exceed it if the law has absolutely required a particular document to be produced before him as evidence of title, and he dispenses with the production of that document. A payment made by the collector without the production of such a shipping paper as is required by law is a payment without authority, confers no title to the money of the United States, and it may be recovered back. The defendant's counsel prayed the court to instruct the jury that this ground of recovery was not open to the plaintiff, because not specified in the bill of particulars. I am inclined to think it is sufficiently specified there, for payment by mistake is one of the grounds of claim there mentioned; but, however this may be, after the evidence in support of this ground had all been introduced without objection, it was too late to ask the judge to rule that this ground of recovery was not in the particulars of the demand. Besides, it was purely a matter of discretion in the court below, how far the court would require the plaintiff to give notice of the ground on which he intended to rest his claim; and a ruling in reference thereto is not the subject of a bill of exceptions.

Judgment affirmed, with six per cent. damages and costs.