IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| JESSE FULLER, | ) | No. 73807-1-I |
| | ) | |
| Appellant/Cross-Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| FISHERMEN'S FINEST and NORTH | ) | |
| PACIFIC FISHING, INC., | ) | |
| | ) | |
| Respondents/Cross-Appellants. | ) | FILED: August 8, 2016 |

SCHINDLER, J. — Jesse Fuller appeals the award of attorney fees and costs against him and against his attorney for violation of CR 11 and RCW 4.84.185. Because the court erred in concluding the complaint and the amended complaint against Fishermen's Finest Inc. and North Pacific Fishing Inc. violated CR 11 and RCW 4.84.185, we reverse and remand to vacate the judgment.

Crewmember Contract

Beginning in 2005, Jesse Fuller worked in Alaska during the fishing season as a deckhand on the "F/V American No. 1." The F/V American No. 1 is "a 160 foot factory catcher processor." North Pacific Fishing Inc. (North Pacific) owns F/V American No. 1 and Fishermen's Finest Inc. manages the vessel.

On June 24, 2013, Fuller entered into a "Crewmember Contract" with North Pacific to work as a deckhand on the F/V American No. 1 for "sixty (60) consecutive

Days ('Term')." The contract states the term begins when Fuller reports for duty aboard the vessel to work a "Trip." A "Trip" begins when the vessel leaves port to fish and concludes when the vessel completes the offload of the fish. If the 60-day term ends when the vessel is at sea, the contract states the term "shall automatically extend until the Vessel next returns to port for an off-load and the Crewmember is released by the Captain after the off-load is completed." The Crewmember Contract states, in pertinent part:

AMERICAN NO. 1 CREWMEMBER CONTRACT (Rev. 1/13)

Printed Crewmember Name:    Jesse Fuller

Crew Position:    Deckhand                          Point of Hire:   Seattle, WA

Crewshare Percentage ("CP") shall be 1.0%    Contract Term:    60 days

Trip Crewshare Percentage ("TCP") shall be CP x 85

1. <u>CONTRACT PARTIES</u>. This contract ("Agreement") is entered into by and between North Pacific Fishing, Inc. ("Owner"), as owner of the American No. 1 ("Vessel"), and Mr. Jesse Fuller ("Crewmember") for employment aboard that Vessel.

2. <u>CONTRACT TERM</u>. The Term of this contract shall begin the date Crewmember first reports for duty aboard the Vessel with the intention of working on a Trip, as defined in the following paragraph. The term of this Agreement is for sixty (60) consecutive Days ("Term"). If the Vessel is at sea when the Term ends, the Term shall automatically extend until the Vessel next returns to port for an off-load and the Crewmember is released by the Captain after the off-load is completed. If the Term ends within thirty (30) days of a cessation of fishing operations, then the Term shall automatically extend until the Vessel returns to Seattle.

A Trip begins when the Vessel leaves a port to fish and concludes when the Vessel completes an offload of at least 16,500 cases of fish product.

Under the terms of the Crewmember Contract, if the crewmember "successfully completes working a Trip," North Pacific shall pay "Trip Wages within thirty (30) days of the expiration of each Trip" calculated as a Trip Crewshare Percentage of 1 percent

2

multiplied by the "Trip Net Vessel Proceeds." The contract also states that "within thirty (30) days of completion of the Term," North Pacific shall pay a term bonus of 15 percent of the Crewshare Percentage multiplied by the "Term Net Vessel Proceeds." The Crewmember Contract states:

> 5. <u>CREWMEMBER WAGES, BONUSES, AND PAYMENTS</u>.
>
> a) Trip Wages: If and only if Crewmember successfully completes working a Trip, the Owner shall pay Crewmember the following amounts as Trip Wages within thirty (30) days of the expiration of each Trip. TCP x Trip Net Vessel Proceeds.
>
> b) Term Bonus: If and only if Crewmember completes working a full Term, Owner shall pay as a Term Bonus within thirty (30) days of completion of the Term. .15 x CP x Term Net Vessel Proceeds.
>
> . . . .
>
> "Net Vessel Proceeds" is equal to the "Gross Vessel Proceeds" less "Vessel Expenses."

The contract also provides that North Pacific may reimburse the cost of return transportation to the "point of hire."[1]

The Crewmember Contract includes a provision that requires "[a]ll disputes of any nature whatsoever" between North Pacific and the crewmember shall be subject to mandatory binding arbitration and governed by statutory and federal maritime law.[2] The contract states:

> 13. <u>JURISDICTION, VENUE, ARBITRATION, CHOICE OF LAW, CLAIMS BAR DATE, SUBSTITUTE SECURITY, MERGER</u>. This Contract is made in Seattle, Washington. Owner and Crewmember submit to jurisdiction in Washington State. <u>All disputes of any nature whatsoever</u>

---

[1] The Crewmember Contract states:

6. <u>TRANSPORTATION</u>. The Crewmember is responsible for all transportation costs to and from the Vessel and the point of hire. Owner may, in its discretion, provide Crewmember's return transportation from the Vessel to Crewmember's point of hire as listed above in a mode determined at the sole discretion of the Owner or provide reimbursement for such transportation.

[2] Emphasis omitted.

between Owner and Crewmember (or Crewmember's representatives) <u>shall be exclusively subject to the Statutory and Maritime Law of the United States</u> and exclusively venued at Seattle, Washington. All such claims shall be commenced within six (6) months after the events first giving rise to the claim and <u>shall be resolved by binding arbitration before JAMS in Seattle</u>, Washington in accordance with King County Mandatory Arbitration Rules. . . . All prior and oral discussions are merged into this final Contract, which contains the entire and final agreement between Owner and Crewmember, and the provisions herein shall not be modified in any manner except by writing signed by both parties.[3]

Fuller reported for duty aboard the F/V American No. 1 in Dutch Harbor, Alaska on June 25, 2013. Under the terms of the Crewmember Contract, because the 60-day contract term expired while the vessel was at sea, the 60-day term was extended to August 31 when F/V American No. 1 returned to port and the offload was complete. After the term agreed to in the Crewmember Contract expired, Fuller continued to work as a deckhand on F/V American No. 1. On October 20, 2013, Captain Darin Vanderpol and Fuller executed the "Last Day of Work Form." Captain Vanderpol checked the box on the form that states the reason for separation is "Contract Complete." Captain Vanderpol did not check the box for "Voluntary Quit" or "Fired."

On November 19, 2013, Fishermen's Finest General Manager Kristian Uri made a direct deposit of net wages to Fuller's bank account in Oregon. On November 22, Fuller retained maritime attorney John Merriam to pursue a wage claim against North Pacific and Fishermen's Finest.

On November 26, Merriam sent a letter to North Pacific and Fishermen's Finest (collectively, FFI) requesting "all employment contracts and settlement sheets" for 2013. The letter states:

I have been retained to represent Jesse Fuller in connection with a claim for wages from the American No. 1 ending in October of this year. Please

_____

[3] Emphasis in original.

4

be so kind as to send me a copy of all employment contracts and settlement sheets for the year 2013 for Mr. Fuller.

I would like to hear your side of the story. If I haven't heard from you or someone on your behalf within 10 days from the date of this letter, litigation will commence.

FFI did not respond. On December 16, Merriam sent another letter stating that because FFI did not respond, he assumed "this matter is to be litigated" and planned to file a lawsuit "before the end of January."

On January 15, 2014, an attorney representing FFI, William Walsh, sent an e-mail to Merriam. The e-mail states that because "[t]he captain reports Fuller quit," Fuller is not entitled to a "contract completion bonus." The e-mail states:

> Mr. Fuller left the boat with one trip left in the season . . . . The captain reports Fuller quit. As for the 15% number you referenced, that is not a "holdback." It is a contract completion bonus—paid when the contract is completed, which it was not in these circumstances. . . . Payroll information is listed by transaction and those transaction records are available.

Let me know if you have additional questions.

Merriam responded that because there was no written contract under federal maritime law, Fuller did not "quit" when he left the vessel in October 2013.

> How can a fisherman 'quit' when not under a written contract, required by 46 USC 10601? If y[our] client is wrong about [Fuller's] earlier contract having expired, please provide me with a copy of the contract in force when he 'quit'. I have yet to be copied with any contract(s) nor with an accounting of the catch and deductions as required by 46 USC 10602.
> Unless I hear otherwise from you, I will assume that this case is to be litigated.

On January 27, 2014, Walsh sent an e-mail to Merriam that included FFI "in-house counsel" Dennis Moran as a recipient. The e-mail states Merriam should "deal directly with the company" and "forward all future communications regarding this matter to Fishermens [sic] Finest in-house counsel, Dennis Moran (copied here)."

5

Approximately 20 minutes later, Moran sent an e-mail to Merriam. Moran states he is "having a difficult time understanding your client's claim, from the correspondence," and "whether you are complaining about a nonpayment, an underpayment or you are just complaining about Mr. Walsh not supplying you personally with some documentation." Moran asked Merriam to provide the following information so he could "look into the matter personally" and "clarify the issues quickly:"

    a.    The name of the vessel, and days your client worked on that vessel;

    b.    The work days for which your client believes he was not paid or underpaid;

    c.    Any additional facts that might bear on the matter.

. . . .

Dennis Moran
President and General Counsel
Fishermen's Finest, Inc.
570 Kirkland Way, Kirkland WA[,] 98033.

Merriam responded the next day at approximately 7:00 a.m. The January 28 e-mail to Moran states the "information has already been provided and is in your file." Merriam states he planned to file a lawsuit "in the next month or so." Merriam included Walsh and Fuller as recipients of the e-mail.

Later that same day at approximately 4:00 p.m., FFI employee Courtney Banks sent an e-mail to Fuller and a letter as an attachment. The e-mail states FFI planned to deposit a check in his account. The attached letter states:

Please find enclosed payment of your last contract completion bonus. Also included are two months of interest on these wages at 1% per month, your northbound airfare reimbursement from this contract, and a refund for two hours of legal expenses at $125 per hour.

On January 29, FFI deposited $5,816.43 in Fuller's bank account.

## Seaman's Complaint for Wages and Damages

On February 19, 2014, Fuller filed a "Seaman's Complaint for Wages and Punitive Damages" against FFI. The complaint alleged Fuller signed a 60-day contract on June 24, 2013; the contract expired on August 23, 2013; and Fuller "continued working for defendants without a written contract required by 46 U.S.C. § 10601."

46 U.S.C. section 10601 states the owner of a fishing vessel "shall make a fishing agreement in writing" with a seaman that states the "period of effectiveness of the agreement" and the "terms of any wage, share, or other compensation arrangement."

Under 46 U.S.C. section 11107, an agreement that violates 46 U.S.C. section 10601 is void ("An engagement of a seaman contrary to a law of the United States is void."). 46 U.S.C. section 11107 states a seaman "so engaged may leave the service of the vessel at any time and is entitled to recover the highest rate of wages at the port from which the seaman was engaged or the amount agreed to be given the seaman at the time of engagement, whichever is higher."

The complaint also alleged Fuller "was not given an accounting of the catch;" "was shorted on his wages in the amount of a 15% contract completion bonus, because he had completed the written contract of employment;" and "was denied his southbound air fare."

The complaint requested an award of "the highest rate of wages paid to a similarly-situated deckhand hired out of the port of engagement" under federal maritime law and double wages and attorney fees under state law. The complaint also sought punitive damages and attorney fees under federal maritime law.

After service of the complaint on February 21, Moran provided to Merriam for the first time copies of the e-mail, the letter, and the check that had been sent to Fuller. Moran threatened to seek CR 11 sanctions if Merriam did not dismiss the complaint.

On February 25, Merriam filed a grievance against Moran with the Washington State Bar Association (WSBA) Office of Disciplinary Counsel for contacting his client in violation of the Rules of Professional Conduct. RPC 4.2 states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

On March 7, 2014, Fuller filed an "Amended Seaman's Complaint for Wages and Punitive Damages" against FFI. The amended complaint reiterates the allegations in the original complaint and alleges bad faith.

FFI filed an answer admitting Fuller "was a crew member of F/V American No. 1 subject to the terms of a contract during time periods mentioned in the Complaint." FFI denied Fuller "is entitled to any additional wages regardless of how calculated." FFI asserted a number of affirmative defenses including that Fuller "has been fully and completely compensated by Defendants for all wages claimed in the Complaint" and "fully and finally released Defendants from any and all liability relating to the subject matter of the Complaint." FFI filed a counterclaim alleging the complaint was "frivolous and advanced without reasonable cause" under RCW 4.84.185 and seeking an award of attorney fees under RCW 4.84.185 and CR 11.

Motion to Compel Arbitration

On April 14, 2014, FFI filed a motion to compel arbitration. FFI argued the dispute was governed by the mandatory arbitration provision in the Crewmember

Contract. FFI asserted Fuller quit on October 20, 2013 and he "has no basis to claim a higher wage rate" under federal law. FFI reserved the right to file a motion to request an award of attorney fees under CR 11 and RCW 4.84.185 after the arbitration.

In support of the motion to compel arbitration, FFI submitted the declaration of Captain Vanderpol and General Manager Uri. According to Captain Vanderpol, Fuller agreed to continue working after August 31, 2013 and on October 20, 2013, Fuller told Captain Vanderpol that "he quit and asked me, for the first time, to be released from crew duty." Uri states Fuller quit but on January 29, 2014, FFI paid his crew wages and made a direct deposit for "a final contract completion bonus" and airfare. The court granted the motion to compel arbitration and stayed the proceedings.

Arbitration

The arbitration hearing was scheduled for October 6, 2014. The parties agreed to "submit the dispute for consideration to the Arbitrator on the record that had been submitted."

Fuller argued the 60-day written contract ended after the offload on August 31, 2013 and the oral contract did not meet the requirements of federal law, 46 U.S.C. section 10601(a). Because the contract was void under 46 U.S.C. section 11107, as alleged in his complaint, Fuller asserted he was entitled to recover the highest rate of wages paid at the port of engagement and attorney fees under federal maritime law.

FFI claimed that even if the written contract expired after the offload on August 31, the oral agreement between Fuller and Captain Vanderpol did not violate 46 U.S.C. section 10601.

The arbitrator issued a decision and order on October 29, 2014. The arbitrator agreed that an oral contract is void under federal maritime law, 46 U.S.C. section

9

11107. But the arbitrator found that because Fuller was not under duress, coercion, or deception and the oral agreement did not alter the terms of the written agreement, there was no violation of federal law. The arbitrator found Fuller asked to continue working and agreed to extend the terms of the written contract.[4]

The arbitrator concluded FFI did not act in bad faith by delaying payment of the term bonus. The arbitrator found FFI attorneys Walsh and Moran relied on erroneous information from Captain Vanderpol and General Manger Uri that Fuller quit in concluding he was not entitled to the term bonus.

The arbitrator notes FFI reserved seeking attorney fees in superior court under CR 11 and RCW 4.84.185. The arbitrator states, "After reading this opinion and considering the 'American Rule,' counsel may wish to reconsider the matter requesting attorneys' fees." The arbitrator also addressed FFI's failure to contact Merriam.

> The Arbitrator believes that it would have been better practice for Fishermen's Finest to have sent Mr. Merriam a copy of the email and a copy of the payment letter on the dates that they were sent to Mr. Fuller.

Award of Attorney Fees under CR 11 and RCW 4.84.185

On November 13, 2014, FFI filed a motion in superior court for an award of attorney fees under CR 11 and RCW 4.84.185. FFI argued the original complaint and the amended complaint "constitute[d] a baseless filing" because there was no dispute the "amounts requested were fully paid prior to the filing of that complaint." In support, FFI submitted excerpts from the deposition of Fuller, the WSBA letter dismissing the grievance against Moran, and copies of the e-mails between Walsh and Merriam and between Moran and Merriam. Fuller filed a response opposing the motion.

---

[4] The arbitrator concluded the contract provision that mandated any dispute shall be governed by federal maritime law precluded Fuller's claims under state law for wages, penalties, and damages.

10

On February 2, 2015, the court granted the request for an award of attorney fees under CR 11 and RCW 4.84.185 but reserved ruling on the amount. The February 2, 2015 order states:

> Defendants Fishermen's Finest . . . Petition for Attorneys' Fees . . . is GRANTED, and to be determined as to amount(s) and proper submissions, including proposed [findings of fact]/[conclusions of law] and lodestar compliance.

FFI submitted an "Application for Fees and Costs," proposed findings of fact and conclusions of law, and a proposed judgment. FFI asserted the "total amount of fees and costs related to this case has been $67,805.00 and $2,513.43 respectively, for a collective total of $70,318.43."

On May 14, 2015, the court entered an order granting the application for fees under CR 11 and RCW 4.84.185. The court found "certain billed efforts" were "duplicative, unnecessary, or overstated" and reduced the request of $70,318.43 to an award of $29,635.43.

Fuller filed a motion in opposition to the proposed findings of fact and conclusions of law and judgment. Fuller objected to a number of the findings including the proposed finding that "[o]n January 29, 2014, Defendants paid Mr. Fuller the full amount that was in dispute." Fuller argued that under federal law, the amount in dispute was not limited to the term bonus paid by FFI.

> Fuller claimed an increased crewshare per 46 U.S.C. §11107 for defendants' failure to have an unexpired written contract in effect as required by 46 U.S.C. §10601. . . . Plaintiff further claimed damages for tortious interference with the attorney-client relationship, based on the conduct by Dennis Moran. . . . Finally, plaintiff claimed prejudgment interest on the delayed payment of wages and punitive damages under the general maritime law for the conduct of Mr. Moran.

11

On June 4, 2015, the court entered findings of fact and conclusions of law and the final judgment. The court adopted the proposed findings of fact and conclusions of law with minimal changes. The conclusions of law state the "filings of the Original Complaint and Amended complaint were both frivolous and baseless filings in violation of CR 11 and RCW 4.84.185" and Fuller and his attorney "shall be held jointly and severally liable for attorneys' fees and costs." But the court "halve[d] the determined amount of reasonable attorney fees." The court entered a final judgment against Fuller and Merriam for $16,074.43. The court denied the motion for reconsideration.

Appeal

Fuller contends the court erred in concluding the complaint and the amended complaint were "frivolous and baseless" pleadings that violated CR 11 and RCW 4.84.185 and entering the judgment against him and his attorney. We agree.

The trial court has the discretion to award attorney fees and costs under CR 11 and RCW 4.84.185. Skimming v. Boxer, 119 Wn. App. 748, 754, 82 P.3d 707 (2004). We review " 'whether the court's conclusion was the product of an exercise of discretion that was manifestly unreasonable or based on untenable grounds or reasons.' " Skimming, 119 Wn. App. at 754 (quoting Tiger Oil Corp. v. Dep't of Licensing, 88 Wn. App. 925, 938, 946 P.2d 1235 (1997)). Applying the wrong legal standard is an abuse of discretion. Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

"The purpose behind CR 11 is to deter baseless filings and to curb abuses of the judicial system." Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 219, 829 P.2d 1099 (1992).[5] "CR 11 is not meant to act as a fee shifting mechanism, but rather as a deterrent to frivolous pleadings." MacDonald v. Korum Ford, 80 Wn. App. 877, 891, 912

---

[5] Emphasis omitted.

P.2d 1052 (1996). Civil Rule 11 addresses two types of problems: (1) filings that are not grounded in fact and warranted by law and (2) filings interposed for an improper purpose. Bryant, 119 Wn.2d at 217.[6] Because CR 11 sanctions may have a chilling effect, the court should impose CR 11 sanctions "only when it is patently clear that a claim has absolutely no chance of success." Skimming, 119 Wn. App. at 755. RCW 4.84.185 authorizes an award of attorney fees based on written findings that a lawsuit is frivolous in its entirety. Biggs v. Vail, 119 Wn.2d 129, 136-37, 830 P.2d 350 (1992).[7]

Fuller contends the court abused its discretion in finding the original complaint and the amended complaint was baseless because the disputed wages had been paid in full. FFI contends the record supports the finding that the original and amended complaint was not well-grounded in fact and filed without reasonable inquiry. FFI claims that "[e]ven though Mr. Fuller was not entitled to his completion bonus, Fishermen's Finest proceeded to gratuitously pay Mr. Fuller the disputed amounts."

---

[6] CR 11(a) provides, in pertinent part:
Every pleading, motion, and legal memorandum of a party represented by an attorney shall be dated and signed . . . . The signature of . . . an attorney constitutes a certificate by the . . . attorney that the party or attorney has read the pleading, motion, or legal memorandum, and that to the best of the party's or attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is well grounded in fact; (2) it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

[7] RCW 4.84.185 provides, in pertinent part:
In any civil action, the court having jurisdiction may, upon written findings by the judge that the action, counterclaim, cross-claim, third party claim, or defense was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action, counterclaim, cross-claim, third party claim, or defense. This determination shall be made upon motion by the prevailing party after a voluntary or involuntary order of dismissal, order on summary judgment, final judgment after trial, or other final order terminating the action as to the prevailing party. The judge shall consider all evidence presented at the time of the motion to determine whether the position of the nonprevailing party was frivolous and advanced without reasonable cause. In no event may such motion be filed more than thirty days after entry of the order.

A court may not impose CR 11 sanctions for filing baseless claims unless it "finds that the attorney who signed and filed the complaint failed to conduct a reasonable inquiry into the factual and legal bases of the claim." Bryant, 119 Wn.2d at 220.[8] We use an objective standard to determine whether "a reasonable attorney in like circumstances could believe his or her actions to be factually and legally justified." Bryant, 119 Wn.2d at 220. The court may also consider the need for discovery to develop factual circumstances underlying a claim. Bryant, 119 Wn.2d at 220-21.[9] Courts should be "reluctant to impose sanctions . . . before there has been an opportunity for discovery" because the notice pleading rule "contemplates that discovery will provide parties with the opportunity to learn more detailed information about the nature of a complaint." Bryant, 119 Wn.2d at 222. The fact that a complaint "does not prevail on its merits is by no means dispositive of the question of CR 11 sanctions." Bryant, 119 Wn.2d at 220. "To avoid being swayed by the benefit of hindsight, the trial court should impose sanctions only when it is 'patently clear that a claim has absolutely no chance of success.' " Korum Ford, 80 Wn. App. at 884 (quoting Oliveri v. Thompson, 803 F.2d 1265, 1275 (2nd Cir.1986)).

When Fuller filed the original complaint and the amended complaint, it was not " 'patently clear' " that his claims had " 'absolutely no chance of success.' " Korum Ford, 80 Wn. App. at 884 (quoting Oliveri, 803 F.2d at 1275). The record establishes a factual and legal basis to file a lawsuit against FFI for violation of 46 U.S.C. section 10601 and an award of wages under 46 U.S.C. section 11107.

---

[8] Emphasis omitted.
[9] Citation omitted.

The Crewmember Contract expired when the F/V American No. 1 offloaded its fish product on August 31, 2013, but Fuller continued to work as a deckhand until October 20, 2013. The original complaint and the amended complaint allege the June 24, 2013 60-day Crewmember Contract expired in August and Fuller "continued working for defendants without a written contract required by 46 U.S.C. §10601." In accord with 46 U.S.C. section 11107, Fuller requested "the highest rate of wages paid to a similarly-situated deckhand hired out of the port of engagement."

Under 46 U.S.C. section 10601(a), "the owner, charterer, or managing operator . . . of a fishing vessel, fish processing vessel, or fish tender vessel shall make a fishing agreement in writing with each seaman employed on board."[10] The written agreement must "state the period of effectiveness" and "include the terms of any wage, share, or other compensation arrangement peculiar to the fishery in which the vessel will be engaged during the period of the agreement." 46 U.S.C. § 10601(b)(1), (2). If a vessel owner fails to comply with this requirement, the seaman "is entitled to recover the highest rate of wages at the port from which the seaman was engaged or the amount agreed to be given the seaman at the time of engagement, whichever is higher." 46 U.S.C. § 11107.

But where an agreement includes both written and oral provisions, the agreement is void "only if the oral terms were imposed under duress, or involved the kind of coercion or deception that section 10601(a) is designed to prevent." Flores v. Am. Seafoods Co., 335 F.3d 904, 914 (9th Cir. 2003). In Flores, the Ninth Circuit held a contract is void if the oral agreement "was 'materially different' from the written agreement." Flores, 335 F.3d at 914-15 ("the written contract provided that each

_____
[10] Emphasis added.

15

seaman was to receive a share of the catch, but under an oral agreement, the seamen were to receive, for each fish, a fixed sum set in advance and not based on the market price") (quoting Crowell v. United States, 6 F. Cas. 912, 913 (C.C.D. Mass. 1856) (No. 3447)).

In addition, there was a legal basis to assert a claim for an award of equitable attorney fees under federal maritime law. In Golden Pisces, Inc. v. Fred Wahl Marine Construction, Inc., 495 F.3d 1078, 1081 (9th Cir. 2007), the Ninth Circuit recognized an equitable exception to an award of attorney fees:

> [F]ederal courts have created a limited set of equitable exceptions to the American Rule and will award attorneys' fees even in the absence of an applicable statutory or contractual provision when, for example, the losing party acted in bad faith or willfully disobeyed a court order.

See also Madeja v. Olympic Packers, LLC, 310 F.3d 628, 635 (9th Cir. 2002) ("The equitable grant of attorney's fees is appropriate in admiralty only when the shipowner acted arbitrarily, recalcitrantly, or unreasonably."); Vaughan v. Atkinson, 369 U.S. 527, 531-32, 82 S. Ct. 997, 8 L. Ed. 2d 88 (1962); Kopczynski v. The Jacqueline, 742 F.2d 555, 559 (9th Cir.1984).

There was also a factual and legal basis to assert a claim against FFI under state law for delaying payment of the completion bonus. Under RCW 49.52.050(2), an employer cannot "[w]ilfully and with intent . . . deprive the employee of any part of his or her wages" and "shall [not] pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract." Our Supreme Court defines "willful withholding" as " 'the result of knowing and intentional action and not the result of a bona fide dispute as to the obligation of payment.' " Champagne v. Thurston County, 163 Wn.2d 69, 81, 178 P.3d 936 (2008)

16

(quoting <u>Wingert v. Yellow Freight Sys., Inc.</u>, 146 Wn.2d 841, 849, 50 P.3d 256 (2002)). "A bona fide dispute is a ' "fairly debatable" dispute over whether an employment relationship exists, or whether all or a portion of the wages must be paid.' " <u>Champagne</u>, 163 Wn.2d at 81 (quoting <u>Schilling v. Radio Holdings, Inc.</u>, 136 Wn.2d 152, 161, 961 P.2d 371 (1998)). Delayed payment of wages owed to an employee may provide a cause of action under RCW 49.52.050(2) if the delay was willful. <u>See</u> <u>Champagne</u>, 163 Wn.2d at 89. Although FFI took the position that there was a bona fide dispute because Fuller had quit, the Last Day of Work Form signed by Captain Vanderpol does not indicate he "Voluntar[ily] Quit" or was "Fired."

FFI's reliance on an out-of-context portion of the answer Fuller gave in his deposition to assert the record supports an award of attorney fees under CR 11 and RCW 4.84.185 is unpersuasive. In response to the question, "Once you received that [$5,816.43], did you feel like you had been fully compensated?," Fuller responded, "I did." But FFI ignores the remainder of Fuller's response that he had "a different opinion today."

> Q. Once you received that [$5,816.43], did you feel like you had been fully compensated?
> A. I did.
> Q. Do you have a different opinion today?
> A. I do.
> Q. What is that?
> A. The fact that I had to retain a lawyer to even get paid for something that I had completed and the fact that it took me to get a lawyer for them to even pay me doesn't feel right to me, doesn't seem right.
>
> . . . .
>
> Q[.] . . . So, really, what this is about is paying Mr. Merriam?
>
> . . . .
>
> [A.] Yes and no. Yes, to pay him because of the fact that I assumed that they had went through my lawyer with the pay and then I received mine.
> And then also the fact that for almost four years, I dedicated that much time of my life to this company, never once said "no" to these

people, never once missed a flight, never once failed a urine test, never —
went above and beyond to help them on many occasions.

And then to get treated like a piece of garbage and not even paid for something, because I had spent four months up there and because I didn't spend the next three weeks up there, they felt they didn't have to pay me the rest of what they owed me.

We reverse the award of attorney fees and costs under CR 11 and RCW

4.84.185 and remand to vacate the judgment.[11]

WE CONCUR:

---

[11] Therefore, we need not address the cross appeal challenging the reduction of the award of attorney fees.